## Smalling v. Shaw, et al.

(Decided September 20, 1911.)

### Appeal from Monroe Circuit Court.

1. Bill of Exceptions—Time to File.—Although section 334 of the Civil Code of Practice provides that time may be given to prepare a bill of exceptions, but not beyond a day in the succeeding term, if a party tenders and offers to file his bill of exceptions within the time designated in the succeeding term, and the judge receives the bill but fails to approve or disapprove it at that term, he may file it at a subsequent term, though it be beyond the time provided by the Code.

2. Bill of Exceptions—Judge's Refusal to Sign.—Where the judge refused to sign the bill within the time provided by the statute, because the bill was defective, but retained it in his possession and required counsel to substantially re-write it, and then at a subsequent term filed the two bills as a corrected original bill, the two bills will be treated as one bill, and as filed within the time required by law.

3. Peremptory Instruction—Submitting Case to Jury.—In a suit for damages for seduction, it is not necessary, in order to submit the case to the jury, to show with certainty that the defendant had the opportunity of being intimate with the woman; acts showing continued attention to her, and an influence and control over her, are sufficient to authorize a submission of the case to the jury.

4. Testimony—Competentcy of.—It was competent for the plaintiff to testify that the defendant had taken the woman before the grand jury to testify as to the paternity of her child, since that testimony tended to show his influence over and his relations with her.

5. Admission of Testimony Without Objection.—Where a party fails to object to testimony, the question of its competency cannot be reviewed.

PORTER & SANDIDGE and MILLER, RAILEY & CAPAS for appellant.

BAIRD, RICHARDSON & SUMMERS for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

In this action by John D. Shaw against M. E. Smalling for damages for the seduction of Essie Shaw, the daughter of the appellee, there was a verdict of $500.00, and from a judgment upon that verdict Smalling appeals.

1. A preliminary question is presented by the motion of appellee to strike the bill of exceptions from the record. The motion for a new trial was overruled at the August term of the Monroe Circuit Court; and, appellant was then given until the fourth day of the succeeding December term to prepare and file his bill of exceptions. On the fourth day of the December term appellant asked further time, and was given until the sixth day of that term to file his bill of exceptions. On the sixth day of the December term he tendered and offered to file his bill of exceptions; and, the appellee having objected thereto, the bill was submitted for the approval of the court, and upon the motion to file it. On the twelfth day of the December term the judge called a special term of court to begin January 3rd, 1911, and specifically ordered that at said special term "any motion, order, submission, or trial of this case might be made, heard or had." No order was made at the December term directing either the approval or the disapproval or the signing of the bill of exceptions then tendered, and there is nothing in the bill to show either of those facts. On January 7th, the fifth day of the special term, the judge entered an order reciting that he had refused to sign the bill of exceptions at the December term because it did not contain the evidence given, nor the names of the witnesses who testified, and for other imperfections therein pointed out; and, in conclusion, the order further recited that the court upon refusing to sign the bill or to allow it to be filed at the December term, had permitted it to be offered, and had thereupon extended the time to the special January term of the court "for defendant to correct said bill, or present a bill of exceptions," to all of which the appellee objected and excepted. Subsequently, on January 14th, 1911,—the tenth day of the special January term,—the judge entered an order filing the bill of exceptions, and accompanied it with an extended explanation of the reasons for his refusing to sign the bill tendered at the December term, and for finally signing the new or corrected bill at the January term. The order recites, among other facts, that on the fifth day of the Special Term the appellant had offered and tendered a bill of exceptions which he claimed was a corrected bill of exceptions that had been offered at the December term, and that the appellee had excepted to the filing of the bill for the reason that it was, as he contended, a

new bill, and not the one offered at the December term. The order further recites that the judge took the bill offered at the special January term, and after having read and examined it, found that it contained substantially all the evidence produced on the trial, and that the attorneys had re-written the entire testimony in addition to and including the testimony in the first bill tendered at the December term, they claiming and showing to the court that it was the most convenient way to correct the original bill. The order further recites that the judge found that the only paper of the old bill of exceptions that was found in the new bill was the back or outside sheet which contained the endorsement showing that it had been offered and tendered to be filed in court at the December term. The order then continues as follows:

"The attorney for defendant, at the request of counsel and court, agreed to bring into court the bill offered to be tendered at the regular term, of which defendant claims that this bill is only a correction; and the attorneys for the defense are ruled by this court to do so, and deliver the same to the clerk before he copies this bill of exceptions for the Court of Appeals, and when so brought into court and made a part of this bill, the court adjudges it a corrected bill, and signs same as such, to which ruling plaintiff excepts. But if they fail to do this, the court signs said bill as a new bill of exceptions except the sheet on the back, containing the clerk's endorsement of the order filing it—Then this bill of exceptions having been tendered by defendant, which, having been examined and approved by the judge, is ordered to be filed as a part of the record of this case without being spread upon the record, to all of which plaintiff objects and excepts."

The original bill was filed and is a part of the record.

Section 334 of the Civil Code of Practice provides as follows:

"The party objecting must except when the decision is made; and time may be given to prepare a bill of exceptions, but not beyond a day in a succeeding term, to be fixed by the court."

In support of the motion to strike the bill of exceptions from the record, it is contended that the judgment having been entered and the motion for a new trial

having been overruled at the August term, the court had no right to extend the time beyond the succeeding December term. The order entered at the August term giving until the fourth day of the December term for the presentation of the bill of exceptions complied with the requirement of section 334 above quoted, and the same may be said with regard to the order entered on the fourth day of the December term extending the time to the sixth day of that term. When the bill was tendered on the sixth day of the December term, the judge took it into his possession, and there is no order of the court at that term showing that any disposition whatever was made of it. Sub-section 3, of section 337 of the Code provides as follows:

"If the bill of exceptions be approved by the judge, he shall sign it, and it shall be filed as a part of the record, but not spread at large on the order book. If not approved, he shall correct it, or suggest the correction to be made, and sign it. A party objecting to the judge's correction of an exception which purports to state the evidence may, within five days after the bill is signed, file the exception as written by him, if its truth be attested by the affidavits of two bystanders; but its truth may be controverted and maintained by other affidavits filed in the clerk's office, not exceeding five on either side."

It will be seen that this section also provides for a bystander's bill of exceptions, if the judge refuse to sign the bill tendered to him. But a bystander's bill must be prepared and filed not later than five days after the term at which the bill has been signed; it cannot be filed at a subsequent term of the court.

This court has several times held that when a bill of exceptions has been tendered in time, and withheld by the judge for examination, it is to be regarded as filed on the day it was tendered, and may be filed by the judge on any subsequent day, in that term, or at a later term, for the reason that when the bill has been tendered, the party who tendered it thereby lost control of it. He had done all that the law required of him. Toner vs. Railroad Company, 109 Ky., 41; Meaux vs. Meaux, 81 Ky., 475; White v. Allen, 10 Ky. Law Rep. 1025.

Therefore, when the judge took possession of the original bill at the December term, and failed to make some disposition of it, the appellant was helpless; he

could do nothing but wait for the court's action. The order entered on the fifth day of the special January term, which attempted to operate as an order of the sixth day of the preceding December term, and recited what then occurred regarding the judge's refusal to sign the bill, was of no force or effect. It cannot be treated as a nunc pro tunc order for that purpose, for the reason that there was no memorandum of any kind entered at the December term upon which a nunc pro tunc order could be based at the succeeding January term. Nickell vs. Hurst, 29 Ky. L. R., 492; Washington Life Ins. Co. vs. Menefee, 21 Ib., 916.

In Vandever vs. Griffith, 2 Met., 426, this court said:

"At the next March term, we find a statement that 'the parties came by their attorneys, and it appearing that at the trial of this cause at the last term of this court, the court allowed defendants time to prepare a statement and bill of exceptions.'

"Now, how does this appear? Was it from the memory of the judge, or a suggestion of one of the attorneys, or of one of the parties, or a statement by a bystander? It does not appear from the record. There is no trace of any such thing there.

"Are circuit courts to be allowed to act, in matters of the gravest importance to litigants and the community generally, and where there are plain rules of law written for their guidance and control, upon appearances so unreliable and uncertain as were acted upon in this case? Certainly it can not be allowed. If so, the rights of litigants in the mater of making out and filing bills of exceptions will no longer be secure."

We are of opinion that when the judge took possession of the bill at the December term, and failed to then sign it, and at the special January term required both the original and the corrected bill to be filed, as he did, the new bill of exceptions was a mere correction of the original bill and within the meaning of the Code, and satisfied the provisions of the Code above referred to.

Appellee's motion to strike the bill of exceptions from the record will therefore be overrruled.

2. There are no exceptions taken to the instructions to the jury; it is conceded that they are in accord with the rule of law laid down in Stowers vs. Singer, 113 Ky., 591.

It is insisted, however, that appellant's motion for a peremptory instruction for the jury to find for the defendant, at the close of plaintiff's testimony, and repeated at the close of all the testimony, should have been sustained. The plaintiff rested his case upon the testimony of himself and ten other witnesses; and it is insisted that there is nothing in the testimony of any of these witnesses that shows that the appellant had even an opportunity to have begotten the child to which Essie Shaw gave birth on January 2nd, 1910.

Furthermore, appellant insists that the testimony shows that one Sam Creek was the father of the child. An unusual feature of the case is presented in the fact that appellee did not offer his daughter as a witness against appellant, but that the appellant produced her as a witness in his own behalf. She testified that appellant was not the father of her child; that he had never had sexual intercourse with her, and that Sam Creek was the father of her child. While there is no direct or positive testimony sustaining appellee's contention that appellant had been intimate with his daughter, there was ample circumstantial evidence to sustain the verdict. Essie Shaw was about 19 years old, while the appellant, M. E. Smalling, was about 26 years old. They had known each other from infancy, and lived in the same immediate neighborhood. He had begun to court her when she was about 13 years old, and he about 20. He continued to visit her at the home of her father once or twice a week until about two years before the birth of the child, when her father became suspicious of him, and forbade him making further visits to his daughter. Nevertheless, appellant continued to meet her in the neighborhood; would walk home with her, leaving her at the gate. Appellee testified that appellant would hide about appellee's home watching for Essie, and would motion her to come and meet him at a near-by spring, which she would do. About a month after the birth of her child Essie's mother demanded to know the name of the father of the child, and also how Essie had gotten certain money that her mother had found in a closet; and the daughter having refused to give her mother this information, they quarreled, and Essie went to Padgett's house, where she met the appellant by agreement. Appellant shortly thereafter obtained a servant's position for Essie in the home of his brother, W. K. Smalling, and this in spite of the fact

that appellant admits that W. K. Smalling's wife was not on speaking terms with Essie. It further appears that Smalling and Essie and the child were occupying a room together at his brother's house on one occasion during a visit of one of the witnesses in such a way as to indicate that appellant and Essie were upon the most intimate terms.

Furthermore, not only before, but after the birth of the child, appellant was very anxious to find out who would be charged with its paternity; and he went so far as to send his lawyer to Essie, who obtained her affidavit to the effect that appellant was not the child's father. When bastardy proceedings were taken against Sam Creek, appellant saw to it that Essie had a conveyance to town to appear before the grand jury; and upon the trial of this case between her father and Smalling, the latter saw to it that she had a conveyance to the court house. Upon the trial of the bastardy case against Sam Creek, appellant was summoned as a witness and not only ignored the summons, but admits that he successfully dodged the sheriff who tried to execute an attachment to compel appellant's attendance.

It is insisted by appellee that appellant inspired the bastardy proceedings against Creek, and there is some evidence tending to support that contention. Furthermore the record shows that appellant and Essie were sweethearts for many years, and that he exercised that control and influence over her, both before and after the birth of her child, which follows only from affection and confidence. No other person occupied like relations with her. Her testimony with regard to her relations with Sam Creek impresses one with her evident desire to protect her lover. According to her testimony, she was intimate with Sam Creek on the third Sunday in April, 1909, on the occasion of her first or second association with him. The appellant undertook to prove that Sam Creek was the father of the child. The issue was thus squarely made and fought out before the jury; and upon the issue thus raised there was ample testimony to justify the submission of the case to the jury. Appellant's motions for a peremptory instruction for the jury to find for him were properly overruled.

3. Appellant further insists that the court improperly allowed the appellee to be asked whether the defendant had taken Essie before the grand jury to testify

as to the paternity of her child, and that appellee had answered that Smalling came with his daughter, took her there in his surrey, and came with her to go before the grand jury where she testified that Sam Creek was the father of her child. We are of opinion that this testimony was competent to show his influence over and relations with Essie; and in that respect it was amply corroborated by several other instances of a like control.

4. It is further insisted that the court erred in permitting appellee to show that appellant had been subpoenaed and afterwards attached for failure to attend as a witness in the Sam Creek bastardy case. In testifying appellant himself admitted those facts to be true, upon cross-examination, and without objection. Furthermore, the record fails to show that there was any objection to the question when it was addressed to appellee; and there having been no objection, the ruling of the trial court in that respect cannot be reviewed. Code, sec. 333-2; Loving v. Warren County, 14 Bush, 316; Forest v. Crenshaw, 81 Ky., 51.

Judgment affirmed, with damages.