## Domestic Life & Accident Insurance Co. v. Smith.

(Decided May 7, 1935.)

JOHN W. ROWE and A. A. BABLITZ for appellant.

R. E. LEE MURPHY, TAYLOR N. HOUSE and ANTHONY W. THOMSON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

In April, 1932, the Domestic Life & Accident Insurance Company, for a premium of 52 cents to be paid weekly, issued and delivered to James Smith its policy insuring his life in the sum of $500, and designating

George Smith the beneficiary. The insured died the 24th day of December, 1932, leaving surviving the beneficiary, who brought this action to recover the $500, the amount of the policy. The insurance company defends, denying the allegations of the petition and affirmatively pleading the failure of the insured, or any one for him, to pay the premium after the 29th day of August, 1932.

In the trial court it was "stipulated and agreed by and between the parties hereto that the whole issue to be determined in this case is whether the plaintiff paid the premiums under the terms of this policy after the 29th day of August, 1932." To this issue the evidence of the parties was directed, and the jury accepted that in behalf of the beneficiary and returned a verdict in his favor.

To sustain his right to recover on the policy, the beneficiary introduced himself, Gladys Coleman, and Mattie Brooks. They testified the last premium paid was paid by George Smith "around the last of November" in the presence of Gladys Coleman and Mattie Brooks, at the home of Smith, to O'Neal, the collector of the insurance company, and the entry of the payment was made in their presence by the latter on a card which had been delivered to the insured by the insurer for that purpose. The card was produced. It shows that the payments had been regularly made from the issuance of the policy to the latter part of November, and within the 30 days' grace period, next before the death of the insured.

To overcome their testimony, O'Neal, the office manager of the insured, his wife, its bookkeeper, unequivocally denied the premiums had been paid after the 29th day of August. To corroborate their testimony they introduced the books kept by the insurer; also, Hathaway, Harris, and Dr. Ridley. Hathaway and Harris testified they were at the office of the insurer on the day of the death of the insured, and George Smith, in their presence, admitted no premiums had been paid after August and the policy had lapsed. Dr. Ridley deposed that the premiums had not been paid; that he was solicited by George Smith to examine the insured with a view of issuing him another policy, and for this purpose he had made more than one trip to the home of George Smith.

The entries on the card which was kept by the insured and on which the payments of the premiums were noted by the agent at the time they were paid is declared by O'Neal to be a forgery in so far as it shows the payment of the premiums after August, 1932. Its genuineness in this respect is attacked only by the testimony of O'Neal, which is corroborated by the statements and conduct of George Smith as the same are recounted by O'Neal, Hathaway, Harris, and Dr. Ridley. This summary of the evidence discloses there was a sharp, positive conflict of that in behalf of the insured and of the insurance company. It was exclusively the province of the jury to determine the credibility of the witnesses and the verity and weight of their testimony.

In its brief the insurer assails the testimony of the witnesses of the insured and declares it is so glaringly conflicting it is unworthy of belief and insufficient to support the verdict. As to these topics, we are not authorized to substitute our judgment for that of the jury. The rules controlling in such case are so familiar, we do not deem it necessary to reiterate them or the reasons sustaining the same, nor cite the many of our opinions restating them. However, see Appeal and Error, Kentucky Digest, volume 2, for annotation and cases.

In the brief of the insurer the argument of counsel of the beneficiary is much complained of. Respecting it, the bill of exceptions contains this statement:

"At the beginning of Mr. R. E. Lee Murphy's speech to the jury, he started off by making some reference to 'thieves, robbers, cut throats, and second story thugs,' to which statement counsel for the defendant objected and excepted, and still excepts.

"Although the Court did not understand the connection in which said remarks were made it nevertheless admonished the jury to disregard same.

"Thereupon counsel for the defendant offered a verbal motion to have the remaining portion of Mr. Murphy's speech taken down by the Official Court Reporter, which motion the Court allowed. And whereupon Mrs. Virginia D. Hanson, Court

Reporter of the Fayette Circuit Court, commenced the taking of the remainder of said speech, her notes being as follows:

" 'After Mr. Murphy, Attorney for the plaintiff, had begun his speech to the jury, and had proceeded only a few moments, counsel for the defendant objected to the remarks of Mr. Murphy, and thereupon requested the Court to order the Reporter to take down the speech of Mr. Murphy, which the Court did, and just as the Reporter began to take his speech in shorthand Mr. Murphy said that he would withdraw all reference to "thieves and second story burglars" whereupon the Court admonished the jury that they were not to consider any remarks with reference to "thieves and second story burglars." '

"The Court Reporter took only a short portion of said speech, and then announced her inability to go on further with same, due to the rapidity of expression and incoherence, and the Court on its own motion ordered the remainder of the speech taken down by Mrs. Lila D. Phelps, who was sworn in as Court Reporter, Pro Tem.

"Further objections made to the speech as delivered by Mr. Murphy, objected to the words, 'These People Living by Their Wits,' [referring to those persons connected with the insurance company] 'That man couldn't write a hand like that in that book if he had six hands. His fingers would get in the way—That defendant's agents lived by their wits, that his client earned money by cleaning cuspidors.'

"This speech is filed and marked tendered, and will be found with the Stenographer's Transcript of Testimony, and made a part of this Bill of Exceptions, by Reference as if copied herein in full.

"At the conclusion of Mr. Murphy's speech, Mr. A. A. Bablitz, of counsel for the defendant made a motion to set aside the swearing of the jury because of Mr. Murphy's improper argument. Said motion overruled, exceptions noted."

It is a familiar rule that "the office of a bill of exceptions is to make a part of the record such matters

as transpire in the progress of the trial which do not appear on the order book of the trial court. Broadway & Newport Bridge Company v. Commonwealth, 173 Ky. 165, 190 S. W. 715. The trial judge must determine the accuracy of a bill of exceptions prepared by the party excepting and presented to him, and he is required to sign only such a bill as he deems correct; but he may not arbitrarily refuse to sign a bill, and a writ of mandamus will issue to compel him to sign and approve an unobjectionable bill, or if the bill presented does not fairly state the truth of the case, it is his duty to make such changes and corrections in the bill as will make it conform to the truth and then to sign it. Smalling v. Shaw, 144 Ky. 458, 139 S. W. 779; Casebolt v. Butler, 175 Ky. 381, 194 S. W. 305; Thompson v. Tyrie, 200 Ky. 741, 255 S. W. 526.'' Miller v. Tartar, 246 Ky. 52, 54 S. W. (2d) 606, 607. In Bruner v. Commonwealth, 225 Ky. 713, 9 S. W. (2d) 1080, 1081, we said:

"It will further be observed that under the provisions of subsection 3 of section 337, Civil Code, it is only matters relating to the evidence where an exception written by the party and approval refused by the judge may be supported and controverted by affidavits. When the trial judge certifies as to his own ruling and exceptions taken during the trial, his statement cannot be assailed by bystanders, and neither can the truth of the record be assailed by bystanders.''

In Consolidated Coach Corp. v. Garmon, 233 Ky. 464, 26 S. W. (2d) 20, 22, it is written:

"When the judge signs and approves a bill of exceptions, the truth of what he states, or certifies, as to bill of evidence may be controverted by the affidavits of bystanders in the form of a bill of evidence; but when he certifies as to his own ruling and exceptions taken during the trial, neither his statements, nor the truth of the record as made up, can be assailed by bystanders. In this case he certified that the attorney representing the appellee made the argument complained of, and that it was objected to. There can be no contradiction of this certification, by affidavits.''

It is argued by the insured that the words "thieves, robbers, etc.,'' used by counsel of the beneficiary in his

address to the jury, now shown by the bill of exceptions, referred to the agents of the insurer. The beneficiary in his brief contends that its counsel used them when explaining how his client and witnesses were regarded by the insurer and its agents. It should be kept in mind that the trial court did not determine the correctness of these contentions. The bill of exceptions concerning them is that "the court did not understand the connection in which the remarks were made." Therefore, we are precluded from now so determining. The court admonished the jury to disregard the objectionable words. Counsel of the beneficiary thereupon withdrew his remarks containing them. And again the court admonished the jury not to consider "any remarks with reference to the 'thieves and second story burglars.' "

The presumption is conclusive that the jury in obedience to the admonition of the court disregarded them. The major portion of the speech of the beneficiary's counsel is a part of the bill of exceptions. It is argued that the address discloses that he used derisively certain words when referring to the agents and witnesses of the insurer, and that his contemptuous mannerism emphasized his use thereof to such an extent as to deprive the insurer of a fair and impartial trial. An examination of the bill of exceptions discloses nothing upon which to premise this argument. It discloses that the insurer further objected only to the language:

> "These people live by their wits, that man could not write a hand like that in that book, if he had six hands. His fingers would get in the way. The defendant's agents live by their wits and my client earned money by cleaning cuspidors."

Adhering to the accepted, applicable rules, restated above, our review of the argument must be confined to that portion of the address to which the insurer objected at the time of its making as disclosed by the bill of exceptions.

It is earnestly and strenuously argued the statement that "the defendant's agents lived by their wits and my client earn money by cleaning cuspidors," was unauthorized by the evidence and intensely prejudicial. The evidence shows that the agents of the company, by the use of their attainments and talents, discharged their duties and thus derived their earnings. The bene-

ficiary was a porter at the Drake Hotel. The character of services of a hotel porter is a matter of general knowledge. Considering the facts, we are not prepared to say that his language as to the agents living by their wits, and his client earning money by cleaning cuspidors, was an unfair or an unreasonable deduction, not authorized by the evidence. Aside from this, we are unable to comprehend that it in any way influenced the jury in the consideration of its verdict.

It is true in many cases we have condemned arguments of counsel, and in a number of them the judgment was reversed on account of improper argument. As an illustration of such cases, see Horton v. Herndon, 254 Ky. 86, 70 S. W. (2d) 975; Pullman Co. v. Pulliam, 187 Ky. 213, 218 S. W. 1005; Dorsey v. Proctor, 207 Ky. 385, 269 S. W. 316. The arguments in those cases are not analogous to that portion of the argument objected to in the present one.

A number of affidavits were filed showing that the jurors were uninfluenced by the argument of counsel in the consideration of their verdict. Such are not made a part of the bill of exceptions, and for this reason we are without right to consider them in the disposition of the objectionable argument. See Miller v. Tartar, 246 Ky. 52, 54 S. W. (2d) 606, and cases cited.

The insurer offered an instruction which, in substance, directed the jury if it believed from the evidence the insured ''refused or failed'' to pay the weekly premium on the policy becoming due and payable thereon after August 29, 1932, so as not to bring himself, at the date of his death, within the grace period of 4 weeks provided for in the policy, to find for the insurer. The court refused to give it. It gave one directing the jury to find for the plaintiff the amount of the insurance policy, unless it believed from the evidence that the insured or the plaintiff on his behalf failed to make the weekly payment after August 29, 1932, etc., in which event to find for the insurer. It may be conceded that the instruction offered by the insured aptly and correctly submitted the issue to the jury and should have been given, and that the one given by the court was technically incorrect. Yet the given instruction submitted the only issue to be determined, and which was determined, by the jury's verdict, and we are unable to see that the

insurer was in any way thereby prejudiced in its substantial rights. Errors of the trial court must be substantial and affect the substantial rights of the complaining party, and that it does so affect him must as clearly appear as the error itself. Williams v. Rogers, 14 Bush, 776. Indeed, section 756 of the Civil Code of Practice expressly so provides.

A careful, diligent review of the record and the able briefs of the parties convinces us that no error appears in the record authorizing a reversal.

The judgment is affirmed.