## Casebolt v. Butler, Judge.

(Decided May 1, 1917.)

## Motion for Writ of Mandamus.

1. Appeal and Error—Writ of Mandamus to Compel Judge to Sign Bill of Exceptions.—A litigant under ordinary circumstances is entitled as a matter of right to have his unobjectionable bill of evidence and exceptions, in due time tendered, signed and approved by the trial judge, and may, if the trial judge refuses to sign and approve it, have a writ of mandamus from this court compelling him to do so.

2. Appeal and Error—Litigant in Contempt of Court—Not Entitled to Mandamus to Compel Judge to Sign Bill of Exceptions.—Where the husband in a divorce case had been ordered by the trial court, after hearing, to deliver the custody of the child to its mother, and he refused to do so, the trial judge was justified in refusing to sign his bill of exceptions in order that he might prosecute an appeal from the order while he was in contempt of court.

3. Appeal and Error—Litigant in Contempt of Court.—A party to a suit who, in contempt of court, fails and refuses to obey the orders of the court, will not be heard to complain that the court declined to aid him in preparing an appeal from the order that he has contemptuously and persistently refused to obey.

R. H. COOPER for petitioner.

J. P. HOBSON, JR., for respondent.

OPINION OF THE COURT BY JUDGE CARROLL—Denying writ of mandamus.

John H. Casebolt has filed his petition in this court asking that we issue a writ of mandamus against the Honorable John F. Butler, Judge of the Pike circuit court, to compel him to sign and approve a bill of exceptions tendered by the petitioner in the case of Nannie Casebolt v. John H. Casebolt pending in the Pike circuit court.

There is no disputed issue of fact. The petition shows that in a divorce suit brought by Nannie Casebolt against her husband, John H. Casebolt, a controversy came up as to which one of the parents should have the custody of their infant child, Blanche Casebolt. When this issue came on to be heard before Judge Butler, oral testimony was introduced by both parties which was preserved in a stenographic report of the proceedings,

and after hearing the evidence so introduced, Judge Butler awarded the custody of the little girl to her mother, Nannie Casebolt, and directed John H. Casebolt to deliver the child to her within ten days. From this order of the court Casebolt prayed an appeal, as he had a right to do, to this court, which was granted, and he was given until a later day to prepare and file his bill of evidence and exceptions. In due time the bill of evidence and exceptions in proper form was tendered to the judge, but he refused to sign or approve it solely because Casebolt had not complied with the order of the court directing him to surrender the custody of the child to its mother, but, on the contrary, took the child out of the jurisdiction of the Pike circuit court and into the State of Ohio.

It might here be said that when Judge Butler made the order giving to the mother the custody of the child, from which order an appeal was prayed, Casebolt superseded the judgment by giving bond in the usual form and causing a supersedeas to be issued thereon. Thereafter Nannie Casebolt filed a copy of the judgment, the supersedeas bond and the supersedeas, and moved this court to discharge the supersedeas upon the ground that an order of the court relating to the custody of an infant child was not a final order or such an order as could be superseded. In disposing of that motion we said, in the case of Casebolt v. Casebolt, 170 Ky. 88, that the order disposing of the care and custody of a child was a final and appealable order, but further said that section 2123 of the Kentucky Statutes "imposes upon this court, as well as the circuit court, the duty of having, in all cases, and at all times, the interest and welfare of the child principally in view; and, although the defeated parent may prosecute an appeal from a judgment concerning the custody of his child, this court will, in a proper case, make such temporary orders as may be necessary to protect the child pending the appeal, notwithstanding the judgment may have been superseded."

And further said: "It is the duty of the court, under the statute, at all times to protect the child by confiding its care and custody to that parent which will best serve the welfare of the child; and, to hold that one parent could hamper or defeat this power of the court by superseding the judgment would nullify the statute. As there can be no liability upon a bond superseding a

judgment awarding the custody of a child to one parent, every such judgment could practically be defeated by an appeal with a supersedeas. . . . .

"In the case at bar, the judgment of the chancellor found the appellee, Nannie Casebolt, to be a proper person to care for and look after her child, who was less than three years old, and that the welfare of said child required the care of its mother. As there is nothing in this record that contradicts, in any way, this finding of the chancellor, it will be taken as true; and, in order to carry out the judgment of the chancellor and protect this infant child by placing it in the care and custody of its mother, the motion will be sustained and the supersedeas discharged."

It is conceded that the bill of evidence and exceptions sets out in proper form and manner all the evidence heard on the motion, and the only reason assigned by the respondent for refusing to sign and approve the bill is, as stated by him in his response, that "An affidavit was filed showing that Casebolt has entirely disregarded the orders of the court by taking the child out of the state and keeping it out of the state, and this matter was not denied. For this reason I reach the conclusion that I ought not to approve a bill of exceptions for him when he had declined to comply with the orders of the court and put it out of my power entirely to have the order enforced by taking the child out of the jurisdiction of the court and into the state of Ohio. This is the only reason that I had for declining to approve the bill and I stated to his counsel in open court that when he complied with the order that I would approve the bill, but that as long as he remained out of the state and disobeyed the order, I felt that I ought not to do it."

Under ordinary circumstances and in due course of law Casebolt had the right to prosecute to this court an appeal from the order made by the judge respecting the custody of the child and the right to have his bill of evidence and exceptions, otherwise unobjectionable, signed and approved by the judge, because without the bill of exceptions so signed and approved setting forth the evidence heard on the motion an appeal to this court would be of no avail to Casebolt. In the absence of the evidence, this court could only affirm the judgment because it could not determine whether the ruling of the trial judge was right or wrong, and the evidence, under

the circumstances of the case, could only be brought to this court in a form available to Casebolt after it had been signed and approved by the judge as the code provisions for a bystanders' bill are not applicable in the circumstances of this case.

Nor have we any doubt respecting the power of this court under section 110 of the constitution, giving it authority "to issue such writs as may be necessary to give it a general control of inferior jurisdictions," to compel by a writ of mandamus a judge of a circuit court to sign and approve a bill of exceptions tendered in due time, to the form of which and matter contained therein there was no objection. A circuit judge cannot arbitrarily deprive a complaining party of the right to prosecute an appeal that may be available to him by refusing to sign an unobjectionable bill of evidence and exceptions that is tendered in proper time: McCreary County v. Bryant, 173 Ky. 363; Louisville Industrial School of Reform v. City of Louisville, 88 Ky. 584; Kelly v. Toney, Judge, 95 Ky. 338; Commonwealth v. Tarvin, 114 Ky. 877; King v. Commonwealth, 153 Ky. 404.

We have, therefore, directly presented for decision the question of the authority of a circuit judge to deny a litigant the right to prosecute an effective appeal from a judgment or order against him when he is in continuing contempt of court by purposely and persistently failing and refusing to obey the order of the court from which he desires to prosecute the appeal.

The exact question here presented is a new one in this state, although a very analagous question was before this court in Wilson v. Commonwealth, 10 Bush 526. In that case, after holding that a convicted prisoner who had escaped would not be permitted to prosecute an appeal to reverse the judgment of conviction, this court, in dismissing the appeal, said: "It seems to us clear, both upon principle and authority, that the motion ought to be sustained. The court ought not to do a nugatory act; yet if we proceed to try this appeal, the appellant cannot be compelled to submit to our decision if it should be against him, and ought not, therefore, to be allowed to reap the benefit of a decision in his favor. He might thus be enabled to defeat the ends of justice entirely, for he may be able to keep beyond the reach of the officers until by the death or removal of

witnesses or other causes his conviction upon a second trial would be rendered improbable, if not impossible. As he has chosen to undertake to relieve himself by flight, in contempt of the authority of the court and of the law, he cannot also invoke the aid of this court." A similar conclusion was reached in Norton v. Commonwealth, 78 Ky. 501.

In Smith v. United States, 94 U. S. 97, 24 L. Ed. 32, the Supreme Court of the United States in refusing to hear a criminal case on the appeal of the defendant who had escaped jail and was a fugitive said: "In this case it is admitted that the plaintiff in error has escaped, and is not within the control of the court below, either actually, by being in custody, or constructively, by being out on bail. If we affirm the judgment, he is not likely to appear to submit to his sentence. If we reverse it and order a new trial, he will appear or not as he may consider most for his interest. Under such circumstances we are not inclined to hear and decide what may prove to be a moot case."

Other instructive cases on the subject of the right of a party in contempt to prosecute an appeal or to ask favors of the trial court are: Hovey v. Elliott, 167 U. S. 409, 42 L. Ed. 215; Campbell v. Justices, 187 Mass. 509, 2 Ann. Cases 462; Tyler v. State, 3 Okla. Crim. Rep. 179, 26 L. R. A. (N. S.) 921, and State v. Scott, 70 Kansas 692, 3 Ann. Cases 511. In the Ann. Cases as well as in the L. R. A. there will be found full notes on this subject, and the unanimous opinion of the courts is that an appeal will not be entertained on behalf of a person convicted of crime who has escaped and is a fugitive from justice, although the practice in some states is to continue the matter of dismissal for a reasonable time in order to give the fugitive an opportunity to surrender himself.

We see no reason why the practice announced in these criminal appeals should not be applied to the case in hand. Here the very party who is asking that the record be prepared so that he may prosecute an appeal is in contempt of court in refusing to obey the order from which he desires to appeal. In defiance of the court's orders, he has refused to deliver the child to its mother and has taken it to another state out of the jurisdiction of the court, so that the orders of the court cannot be enforced against him. If his appeal on a

proper record should be brought to this court and the ruling of Judge Butler affirmed, there is no way by or through which the judgment of this court could be enforced. If the judgment was adverse to Casebolt, he would doubtless continue to keep the custody of the child and remain outside the jurisdiction of the court, but if the judgment of this court was favorable to him, he would probably return with the child and submit himself to the jurisdiction of the court. In other words, the attitude of Casebolt is that "if you decide the case in my favor, well and good, but if you do not, I will keep the child out of your reach, so that no matter what the decision of the court may be I will continue to have the custody of the child." Under circumstances such as these we are clearly of the opinion that Casebolt should not be permitted to thus trifle with the court and so conduct himself as to make its orders and judgments a mere nullity unless he voluntarily saw proper to obey them.

The argument is made in his behalf that the trial court might refuse while he was in contempt to grant a favor or refuse to do something concerning which it might exercise a discretion, but that as the statute gives him the right of appeal, his contempt does not excuse the trial judge from giving him that which under law he has the right to demand.

It is true that the statute gives to Casebolt the right to appeal from the order entered by Judge Butler, but this right he has forfeited by his own voluntary and willful acts. He is here asking the recognition of a right that he conceives will be beneficial to him, and at the same time is saying to the court: "If I should be mistaken and my appeal should not change the status of things, I will pay no attention to your orders or judgments."

If a defendant, who is by statute given the right to prosecute an appeal, can forfeit this right by escaping jail and putting himself outside the jurisdiction of the court so that an adverse judgment would not affect him, we are unable to perceive why a party to a civil suit may not likewise forfeit his right to appeal by voluntarily refusing to obey the order of court from which he desires to prosecute an appeal and also by purposely putting himself in a position in which he would not be amenable to the processes of the court in the event judgment went against him.

In Lindsay v. Lindsay, 255 Ill. 442, the court had before it a question almost identical with the one appearing on this record, and holding that a defendant in a proceeding to declare a child a dependent who was in contempt of court in taking the child and leaving the jurisdiction of the court, could not, until purged of such contempt, prosecute a writ of error to review the decree of the lower court, said: ''The weight of authority seems to be that a party in contempt is not entitled to prosecute or defend an action when the nature of his contempt is such as to hinder and embarrass the due course of procedure in the cause. . . . . The contempt of Mrs. Lindsay affects the due course of procedure in the case by preventing the court from enforcing its decree. So long, therefore, as she remains beyond the jurisdiction of the court and has not purged herself of contempt adjudged against her, she cannot maintain a writ of error to review the correctness. of the decree.''

And so in this case the very purpose of Casebolt in removing himself and the child to another state was to obstruct the due course of procedure by preventing the courts of this state from enforcing any decrees not acceptable to him.

This is not a case in which a party desiring to appeal was in contempt because he could not obey the order of the court, and we do not decide that if the circuit court should impose by an order or judgment conditions on a litigant that in good faith he could not reasonably comply with, his failure to comply would be such contempt of court as to deny him the right of appeal from the order that imposed the impracticable or impossible condition. Nor do we decide that if a litigant should be ordered by the court to do something that he could not do without substantial prejudice to his rights, his failure to obey the order would forfeit his right to appeal from it.

We have no such case before us. Here the party in contempt is voluntarily refusing and failing to do something that he could do without prejudice to any of his substantial rights. We have here a litigant who while invoking the aid of the court is at the same time willfully and persistently setting at defiance its orders and judgments and refusing to obey them unless they are agreeable to him. To sanction this course of conduct on the

part of an obstinate litigant would bring the courts into contempt and be an invitation to others so disposed to show their contempt for the courts while asking their assistance.

We shall not undertake to make any nice distinctions between refusing aid or assistance to a suitor who asks a favor and one who insists on a statutory right when the suitor insisting on his statutory rights is refusing to obey an order of court that he could obey but will not because it does not meet his approval.

Wherefore, the motion for a writ of mandamus is denied.