36 Wn.2d 557 (1950)
219 P.2d 121
GEORGE ARNOLD et al., Appellants,
v.
NATIONAL UNION OF MARINE COOKS AND STEWARDS ASSOCIATION et al., Respondents.[1]
No. 31325.
The Supreme Court of Washington, En Banc..
June 9, 1950.
Bassett & Geisness, for appellants.
Caughlan & Hatten (Gladstein, Andersen, Resner & Sawyer, by Allan Brotsky, of counsel), for respondents.
SCHWELLENBACH, J.
This is an appeal from a judgment dismissing a civil action for libel, after an order had been entered sustaining a demurrer to the amended complaint, and plaintiffs had elected to stand upon their pleadings and refused to plead further.
The amended complaint contained ninety-seven causes of action (one for each plaintiff), each one separate and distinct from the others, but each one (except the name of the plaintiff) having the same allegations. Briefly, the allegations are as follows:
(1) That the defendant union is a voluntary organization, having an office and place of business in Seattle; that defendant Harris is its general agent in Seattle.
(2) That the usual occupation of each plaintiff is work in the steward's department of ships engaged in the Alaska trade or related or similar work.
(3) That, on or about April 11, 1949, defendant Harris, acting for and on behalf of the defendant union, and within the scope of his authority as agent therefor, composed and published of and concerning each of the plaintiffs, defamatory and damaging written statements that each and all of the plaintiffs deserted the defendant association during the 1948 maritime strike and attempted to organize a dual organization for the purpose, in part, of breaking said strike; and which characterized plaintiffs as renegades and, in substance and effect, proposed and encouraged other unions, with influence and control over hiring of employees for work of plaintiffs' usual occupation, to boycott the plaintiffs and prevent them from obtaining employment; that said publications tended to expose plaintiffs to hatred, contempt, *559 ridicule and obloquy; to deprive them of social intercourse; and to injure them in their occupation.
Attached to the complaint and made a part thereof was one of the letters:
 "NATIONAL UNION OF MARINE COOKS AND STEWARDS
 National Office: 86 Commercial St., San Francisco 11
 Phone SUtter 1-8657
 "Seattle Branch April 11, 1949
 110 Cherry Street
 Seattle 4, Washington
 Phone ELliott 2562
 Oscar Anderson, Secretary
 Alaska Fishermen's Union
 84 Union Street
 Seattle 1, Washington
Dear Sir and Brother:
"Enclosed is a list of former members of the National Union of Marine Cooks and Stewards, who deserted this union during the 1948 maritime strike and attempted to organize a dual organization under the leadership of the Sailors Union of the Pacific for the purpose of breaking our strike and destroying our union.
"While these renegades have been completely discredited and defeated, they may attempt to obtain employment in other sections of the industry, particularly when the fishing season opens.
"This information is only for your guidance and formulation to your membership as to the constructive ways and means of carrying on a progressive labor organization.
 Fraternally,
 Joseph Harris, Agent"
(4) Attached to each of said letters was a list of names containing the name of each plaintiff.
(5) As a result of said publication each plaintiff has been damaged in the sum of twenty thousand dollars.
Rem. Rev. Stat. (Sup.), § 2424 [P.P.C. § 117-63], provides:
"Every malicious publication by writing, printing, ... which shall tend: 
"(1) To expose any living person to hatred, contempt, ridicule or obloquy, or to deprive him of the benefit of public confidence or social intercourse; or ...
*560 "(3) To injure any person, corporation or association of persons in his or their business or occupation, shall be libel."
[1] As special damages are not alleged, the sole question for determination here is whether or not the publication is libelous per se.
[2] Malice is not an essential element of civil libel. Ziebell v. Lumbermens Printing Co., 14 Wn. (2d) 261, 127 P. (2d) 677.
[3] "In the absence of ambiguity therein, it is for the court to determine whether a given article is libelous per se. In deciding this issue, the court, considering the article in its entirety, is bound to invest the words used with their natural and obvious meanings. The language used may not be extended by the innuendo or conclusions of the pleader; the defamatory character must be certain and apparent from the words themselves." Ryan v. Hearst Publications, 3 Wn. (2d) 128, 100 P. (2d) 24.
"While it is true that the meaning of the words as published cannot be altered or extended by conclusions of the pleader, yet the ultimate test as to whether or not they are defamatory is the sense in which they would ordinarily and reasonably be understood by the recipients.
"In determining how the recipients would understand the words used, account may be taken of the circumstances under which they were published in so far as they were known to the recipients. It is proper to allege in the complaint that the words were published of and concerning the plaintiff and with reference to extrinsic circumstances, upon which their peculiar applicability to the plaintiff depends. Words which are harmless in themselves may be defamatory in the light of surrounding circumstances." Ziebell v. Lumbermens Printing Co., 14 Wn. (2d) 261, 127 P. (2d) 677.
In Dick v. Northern Pac. R. Co., 86 Wash. 211, 150 Pac. 8, Ann. Cas. 1917 A, 638, paragraph 3 of the complaint alleged:
"`(3) That on the said day the defendant railway company, through its officers and agents, with intent to injure the plaintiff, destroy his reputation and good name, and deprive him of the confidence and esteem of his fellowmen, and for the purpose of preventing him from seeking or securing other employment with said company or any other company at all, and to ruin him in his profession as locomotive engineer, caused to be printed and published, and have ever since said time continued to print, publish and *561 circulate, and are now publishing, printing and circulating the following false, fraudulent and defamatory instrument in writing, which is as follows, to-wit:
 "`"Discharged Eng'r Dick Livingstone, Monta.
 "`"Mr. J.R. Dick Oct. 10, 1907
 "`"Eng'r Livingstone,
 "`"Dear Sir: This is to advise you that you are hereby
 discharged from company's services for intimidating company's
 employees at Whitehall on the 8th inst. while in the performance
 of their duties. (Signed) Yours truly
 "`"C-40 ______________ Nelson
 "`"Cy-MK-EE Master Mechanic."'"
We held:
"II. If the complaint states a cause of action for libel, that statement must be found in the third paragraph. The fourth and fifth paragraphs neither state nor aid in stating such a cause. Returning then to the third paragraph, we find no special damages alleged as resulting from the publication of the letter there set out. To find a cause of action for libel, therefore, we must find that the statements in the letter, which it is alleged were false, are actionable per se. If they are, the plaintiff would be entitled to such general damages for humiliation, injured feelings and mental suffering as would naturally result from the publication, without alleging or proving any special or specific damages. Hanson v. Krehbiel, 68 Kan. 670, 75 Pac. 1041, 104 Am. St. 422, 64 L.R.A. 790. He could not recover for loss of employment, or failure to secure employment, or other specific loss by reason of the publication. These would be special damages, and not being alleged as resulting from the publication, they cannot be proved.
"Our statute defining criminal libel, Rem. & Bal. Code, § 2424 (P.C. 135 § 343), declares, among other things, that every malicious publication by writing, etc., which shall tend to expose any living person to hatred, contempt, ridicule or obloquy, or to deprive him of the benefit of public confidence or social intercourse or to injure him in his business or occupation, shall be a libel. We have held that, eliminating the statutory element of malice, actual or implied, the statutory definition meets the essentials of libel actionable per se as generally recognized in civil actions for damages. Wilson v. Sun Publishing Co., 85 Wash. 503, 148 Pac. 774; Newell, Slander & Libel (2d ed.), p. 43. It seems to us that the necessary tendency of the charge that the plaintiff had been guilty of intimidating co-employees would *562 be to deprive him of the benefit of public confidence, and to injure him in both social and business intercourse with those with whom his vocation brought him in contact, and to injure him in the pursuit of his business or occupation. The language of the letter is actionable per se. The third paragraph, alleging its continued publication by the defendant, therefore stated a cause of action for libel. The complaint was open to objection for indefiniteness as to the manner of the alleged publication, but this was not ground for demurrer but should have been reached by a motion to make more specific."
[4] We feel that the decision in the Dick case is decisive of the problem now confronting us. In the case at bar the letters in themselves would not be libelous if sent to the average individual. But, when we realize that they were sent to other unions which influenced or controlled the hiring of employees for work of appellants' usual occupation, and that the names of all of the ninety-seven appellants were attached to each letter, then the apparently harmless language takes on a more sinister meaning. An official of a union influencing or controlling the hiring of employees would naturally become incensed when he received a letter containing a list of names of workers who, the letter charged, had deserted respondent union during the 1948 maritime strike and attempted to form a rival organization for the purpose of breaking the strike and destroying the union. Although it is not directly suggested that these men be denied employment, the implication is clear. The necessary tendency of the letters was to expose appellants to hatred, contempt, ridicule or obloquy, to deprive them of the benefit of social intercourse, and to injure them in their occupation. The language of the letters, under the circumstances surrounding their publication, was libelous per se.
Respondents cite cases from other jurisdictions holding views contrary to those expressed in the Dick case. We do not deem it necessary to consider these cases. General Market Co. v. Post-Intelligencer Co., 96 Wash. 575, 165 Pac. 482, Ziebell v. Lumbermens Printing Co., 14 Wn. (2d) 261, 127 P. (2d) 677.
*563 [5] Respondents contend that under the circumstances the letters were privileged. This question may be raised by demurrer where privilege is clearly shown on the face of the complaint. Otherwise, it must be raised by answer. The latter is the situation here, and we will therefore not consider the question at this time. See Ryan v. Tribune Publishing Co., 148 Wash. 295, 268 Pac. 893.
The order of dismissal is reversed, and the cause remanded with directions to overrule the demurrer to the amended complaint.
ALL CONCUR.
July 19, 1950. Petition for rehearing denied.
NOTES
[1] Reported in 219 P. (2d) 121.