## NATIONAL UNION OF MARINE COOKS AND STEWARDS *v.* ARNOLD ET AL.

No. 19. Argued October 15, 1954.—Decided November 22, 1954.

*Norman Leonard* argued the cause and filed a brief for petitioner.

*John Geisness* argued the cause for respondents. With him on the brief was *Samuel B. Bassett.*

MR. JUSTICE BURTON delivered the opinion of the Court.

The question before us is whether a state appellate court violates either the Due Process or the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States when it dismisses an appeal from a money judgment as a reasonable measure for safeguarding the collectibility of that judgment. For the reasons hereafter stated, we hold that it does not and that the dismissal of the appeal in the instant case was such a reasonable measure.

This litigation resulted from a "blacklisting" letter written by Harris as an agent of petitioner, National Union of Marine Cooks and Stewards, in 1949, to persons able to affect the employment of the 95 respondents whose occupation was that of stewards in the Alaska trade.[1]

It took the following course:

1949—In the Superior Court of the State of Washington for King County, respondents' libel action against petitioner and Harris, seeking $20,000 damages for each respondent, was dismissed on demurrer.

June 9, 1950—On appeal to the Supreme Court of Washington, the letter was held libelous *per se,* the judg-

---

[1] It stated:

"Enclosed is a list of former members of the National Union of Marine Cooks and Stewards, who deserted this union during the 1948 maritime strike and attempted to organize a dual organization under the leadership of the Sailors Union of the Pacific for the purpose of breaking our strike and destroying our union.

"While these renegades have been completely discredited and defeated, they may attempt to obtain employment in other sections of the industry, particularly when the fishing season opens.

"This information is only for your guidance and formulation to your membership as to the constructive ways and means of carrying on a progressive labor organization." *Arnold* v. *National Union,* 36 Wash. 2d 557, 559, 219 P. 2d 121, 122.

ment was reversed and the cause remanded for trial. 36 Wash. 2d 557, 219 P. 2d 121.

September 4, 1951—In the Superior Court, a total judgment of $475,000 was rendered against petitioner and Harris, awarding $5,000 to each respondent.

September 5, 1951—In the Superior Court, petitioner and Harris filed notices of appeal to the Supreme Court but offered no supersedeas bond and obtained no stay of proceedings.[2]

October 19, 1951—In the Superior Court, in the same case, respondents began a supplemental proceeding to discover petitioner's available assets.

February 15, 1952—In the Superior Court supplemental proceeding, the evidence disclosed no substantial assets of petitioner in Washington but showed $298,000 of United States bonds to be in its possession in California. The court ordered petitioner to deliver these bonds to the court's receiver, for safekeeping, pending disposition of petitioner's appeal.

April 4, 1952—In the Superior Court supplemental proceeding, upon petitioner's failure to deliver the bonds, the court adjudged it in contempt, stating "that said contemptuous conduct . . . frustrates the enforcement of the judgment herein . . . and frustrates the receivership created herein by order of this Court . . . ." 41 Wash. 2d 22, 24, 246 P. 2d 1107, 1108.

May 17, 1952—The Supreme Court struck from its calendar petitioner's appeal on the merits, pending its review of the adjudication of contempt "unless the said appellant Union sooner purges itself of the contempt . . . ."

---

[2] To stay proceedings on appeal, a supersedeas bond for double the amount of the damages and costs would have been required. Wash. Rev. Code, 1951, § 4.88.060.

May 26, 1953—The Supreme Court held that the "adjudication of contempt is affirmed, and the appeal presently pending in the main action shall be dismissed unless, within fifteen days from the date of the remittitur herein, the appellant union purges itself of the order of contempt, by complying with the trial court's order requiring delivery of the bonds to the receiver." 42 Wash. 2d 648, 654, 257 P. 2d 629, 633.

May 27, 1953—In the Supreme Court, respondents filed an affidavit showing that petitioner's disbursements, in 1952, had been $633,391.10, as opposed to its receipts of $413,280.90, and that its total cash assets, at the end of that year, had shrunk to $90,389.84.

June 12, 1953—In the Supreme Court, respondents renewed their motion to dismiss petitioner's appeal in the main action. They filed a supporting affidavit stating that "All of . . . [petitioner's] assets of substantial value are in California and two California courts have refused to entertain suit on the Washington judgment while this appeal is pending."

July 3, 1953—The Supreme Court ordered dismissal of petitioner's appeal unless petitioner purged itself of contempt.

August 19, 1953—The Supreme Court denied petitioner a rehearing and entered judgment dismissing its appeal in the main action.

March 8, 1954—This Court granted certiorari because of the significant relation of the constitutional issue to the enforcement of state judgments. 347 U. S. 916.[3]

---

[3] Two confirmatory rulings had intervened:

November 16, 1953—In this Court, petitioner's appeal from the adjudication of contempt in the supplemental proceeding was dismissed for want of a substantial federal question. 346 U. S. 881.

February 2, 1954—In the Supreme Court, Harris' separate appeal, raising largely the same issues on the merits as petitioner's appeal, was heard and the judgment against him affirmed. 44 Wash. 2d 183, 265 P. 2d 1051.

There is no question before us as to the power of the state courts of Washington, under its laws, (1) to order petitioner to deliver the specified bonds to the receiver, (2) to adjudicate petitioner in contempt for failure to do so, or (3) to dismiss petitioner's appeal upon failure to purge itself of contempt by delivery of the bonds. Those questions have been settled by the Supreme Court of Washington. The question before us is whether the procedure which has culminated in the dismissal of petitioner's appeal violates either the Due Process or the Equal Protection Clause of the Fourteenth Amendment.[4]

We have no difficulty with the Equal Protection Clause because no showing has been made that anyone comparably situated has been treated differently from petitioner. The significant issue is whether the action of the State violates due process of law. To decide this, we consider first whether, generally, the dismissal of an appeal from a money judgment amounts to due process of law where it constitutes a reasonable means of safeguarding the collectibility of that judgment. If so, we may then consider whether the dismissal in the instant case constituted such a means.

The constitutional objection raised by petitioner was long ago considered in *Hovey* v. *Elliott,* 167 U. S. 409. In that case, the Supreme Court of the District of Columbia went further and attempted to deprive a defendant of his right to answer the suit brought against him. Having stricken defendant's answer, the court entered judgment against him as a punishment for his refusal to deliver to a court-appointed receiver certain funds which were the subject matter of the litigation. When the State of New York later refused to honor that judgment, this Court, in

---

[4] ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U. S. Const., Amend. XIV, § 1.

affirming the action of the Court of Appeals of New York, held that the District of Columbia had deprived defendant of his property without due process of law by denying him his constitutional right to a day in court.[5]

The instant case does not go so far. Here the petitioner has had its day in court. The dismissal has cut off only a statutory right of review after a full trial by judge and jury. In *Hovey* v. *Elliott, supra,* this distinction was anticipated and room was left open for a later consideration of cases like the one before us.[6]

---

[5] The deprivation of a litigant's right to present a defense has been upheld, not as a punishment for contempt as prohibited in *Hovey* v. *Elliott, supra,* but rather as a result of the litigant's failure to produce evidence, his violation of a rule of procedure, or other action justifying ·a judgment of default against him. *Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322, 349–354; *Peitzman* v. *Illmo,* 141 F. 2d 956, 960–961. See also, *Bennett* v. *Bennett,* 208 U. S. 505, 514; *Young & Holland Co.* v. *Brande Bros.,* 162 F. 663; *Lawson* v. *Black Diamond Coal Mining Co.,* 44 Wash. 26, 86 P. 1120.

[6] ". . . The difference between the want of power, on the one hand, to refuse to one in contempt the right to defend in the principal case on the merits, and the existence of the authority, on the other, to refuse to accord a favor to one in contempt, is clearly illustrated by the whole line of adjudicated cases.

. . . . .

". . . In affirming the judgment of the Supreme Court of Georgia [*Allen* v. *Georgia,* 166 U. S. 138, 140], the court called attention to the distinction between the inherent right of defence secured by the due process of law clause of the Constitution and the mere grace or favor giving authority to review a judgment by way of error or appeal.

. . . . .

"Whether in the exercise of its power to punish for a contempt a court would be justified in refusing to permit one in contempt from availing himself of a right granted by statute, where the refusal did not involve the fundamental right of one summoned in a cause to be heard in his defence, and where the one in contempt was an actor invoking the right allowed by statute, is a question not involved in this suit." 167 U. S., at 423–424, 443, 444.

While a statutory review is important and must be exercised without discrimination, such a review is not a requirement of due process. *District of Columbia* v. *Clawans*, 300 U. S. 617, 627; *Ohio* v. *Akron Park District*, 281 U. S. 74, 80; *Reetz* v. *Michigan*, 188 U. S. 505, 508; *McKane* v. *Durston*, 153 U. S. 684, 687–688.

While this Court has not, until now, passed upon the constitutionality of a state court's dismissal of an appeal in a case like the present, it has decided somewhat comparable issues. Where the subject matter of litigation has been removed or has removed itself from the jurisdiction of a state court in violation of that court's orders, this Court has upheld a dismissal of the offending litigant's appeal. For example, where a prisoner has escaped from custody while his appeal is pending, this Court has upheld a dismissal of his appeal. Cf. *Eisler* v. *United States,* 338 U. S. 189, and 883. Similarly, after a state prisoner's recapture, this Court has sustained a state court's refusal to revive his appeal. *Allen* v. *Georgia,* 166 U. S. 138. See also, *Smith* v. *United States,* 94 U. S. 97; *Washington* v. *Handy,* 27 Wash. 469, 67 P. 1094; *People* v. *Genet,* 59 N. Y. 80; *Massachusetts* v. *Andrews,* 97 Mass. 543.[7]

The circumstances before us are, in some degree, comparable. The order here violated was issued in a supplemental proceeding to discover and safeguard property of petitioner, without which the judgment would have little or no value. Petitioner's failure to deliver the specified out-of-state property to the court's receiver frustrated

---

[7] For a similar rule in custody cases, see *Casebolt* v. *Butler,* 175 Ky. 381, 194 S. W. 305; *Lindsay* v. *Lindsay,* 255 Ill. 442, 99 N. E. 608; *Henderson* v. *Henderson,* 329 Mass. 257, 107 N. E. 2d 773. In civil actions, where the presence of a defendant within the jurisdiction of a court is essential to enforcement of its decree and he absents himself from that jurisdiction, dismissal of his appeal has been upheld. *Bronk* v. *Bronk,* 46 Fla. 474, 35 So. 870.

44

the state court much as the escape of a prisoner would frustrate it in attempting to review his conviction. Where the effectiveness of a money judgment is jeopardized by the judgment debtor, he has no constitutional right to an appeal extending that frustration.

The dismissal here is not regarded by us as a penalty imposed as a punishment for criminal contempt. It is an exercise of a state court's inherent power to use its processes to induce compliance with a supplemental order reasonably issued in aid of execution. Furthermore, the appeal was not summarily dismissed. Petitioner was allowed 15 days, after being adjudged in contempt, within which to purge itself. The propriety of the dismissal and its remedial nature are demonstrated by the situation in California. Two proceedings brought there by respondents to reach petitioner's assets in California evidently were frustrated by the insistence of the California courts that they would not entertain any suit on the Washington judgment while an appeal from that judgment was pending in Washington.

The supplemental proceeding indicated that the $298,000 in bonds, to which the court directed its order, constituted the only substantial asset from which payment of respondents' judgment might be realized and that this asset might be dissipated unless placed in protective custody.

In appraising the reasonableness of the State's order, it is noteworthy that the court did not seek to apply the bonds to the satisfaction of respondents' judgment. It merely directed petitioner to deliver them to the court's receiver for safekeeping. Petitioner's appeal was not dismissed because of petitioner's failure to satisfy a judgment pending an appeal from it. It was dismissed because of petitioner's failure to comply with the court's order to safeguard petitioner's assets from dissipation pending such appeal.

Viewing the dismissal of petitioner's appeal in the light of its reasonableness in sustaining the effectiveness of a state's judicial process, as against the rights of a judgment debtor, without filing a supersedeas bond, to refuse to comply with orders safeguarding the value of that judgment, we find nothing that violates due process of law.

The judgment of the Supreme Court of the State of Washington, accordingly, is

*Affirmed.*

Mr. Justice Black, with whom Mr. Justice Douglas concurs, dissenting.

In *Hovey* v. *Elliott,* 167 U. S. 409, decided in 1897, this Court held that due process of law was denied by a trial court which had refused to permit a defendant to try his case on the merits merely because the defendant had disobeyed the court's order to pay into the court's registry money which was the subject matter of the controversy. This Court said that such a denial of all right to defend would convert the court into an instrument of wrong and oppression. The appeal here was dismissed by the Washington Supreme Court on the single ground that petitioner had disobeyed a court order to turn over certain bonds which were not even the subject matter of this lawsuit. I think the *Hovey* v. *Elliott* doctrine applies with equal force to this dismissal. True this Court has said that a state is not constitutionally required to provide a system of appellate court review. But since Washington has done so, proceedings in its supreme court are merely the final step in the judicial process in trying cases and therefore cannot be conducted so as to deny that "due process" which the Fourteenth Amendment requires. *Cole* v. *Arkansas,* 333 U. S. 196, 201–202, and cases there cited. And Washington also must abide by the Fourteenth Amendment's equal pro-

tection command in deciding who can and who cannot appeal. *Cochran* v. *Kansas,* 316 U. S. 255.

State legislatures have broad power to forbid varied types of conduct and to provide for punishment by courts. But the power to punish for violation of admittedly valid statutes is not unlimited. State punishments must not obliterate clearly granted federal rights. See, *e. g., Hill* v. *Florida,* 325 U. S. 538, 543. I suppose no one would contend that a defendant convicted of such conventional crimes as larceny or embezzlement could be punished by compelling him to give up his religious faith. The right of a person to be heard in his own defense stands on an equally firm constitutional base. In *McVeigh* v. *United States,* 11 Wall. 259, 267, this Court said that to deny an "alien enemy" a right to defend himself "would be a blot upon our jurisprudence and civilization." It was there said that a constitutional right to defend is inseparable from a liability to be sued. And I can see no reason why the same principle is not equally applicable in each court where rights are passed upon. The appeal here was but a continuation of petitioner's defense which began in the trial court. But petitioner was denied any opportunity to defend itself in the appellate court because it had disobeyed a court order. By whatever other name it may be called, the dismissal was punishment. I do not think the Washington legislature could provide this kind of punishment for disobedience of a court order or for any other crime, and certainly the state court's power to do so is no greater than that of the state's legislature. *Hovey* v. *Elliott, supra,* at 417–418.

In summary, petitioner having been haled into court as a defendant has been denied an opportunity to defend itself in a court that had power finally to decide whether petitioner should pay money to plaintiffs who sued. The purpose was punishment for an offense having no relation at all to the merits of the plaintiff's claim or to the peti-

tioner's defense. From the beginning, due process and equal protection have meant that every defendant must be permitted to defend himself in any court where his antagonist can appear and prosecute. This right of defense belongs to all—good or bad, one who has violated laws the same as one who has not. I would reverse this case.