Clover **PATTERSON**, Individually and on behalf of all other persons similarly situated, Plaintiff,

v.

George **WARNER**, Individually and in his official capacity of Justice of the Peace of Kanawha County, Louden District, West Virginia; and Graham Motor Company, a corporation, Defendants.

Civ. A. No. 69–232 CH.

United States District Court,
S. D. West Virginia,
Charleston Division.

Argued July 3, 1972.

Decided Aug. 25, 1972.

John L. Boettner, Jr., J. David Cecil and Herman Canady, Jr., Legal Aid Society of Charleston, Charleston, W. Va., for plaintiff.

James G. Anderson, III, Asst. Atty. Gen., for defendants.

Before FIELD, Circuit Judge, and CHRISTIE and KNAPP, District Judges.

KNAPP, District Judge:

On November 7, 1969, plaintiffs instituted the above styled civil class action challenging the constitutionality of Chapter 50, Article 15, Section 2, of the West Virginia Code of 1931, as amended. The statute in question requires the posting of bond in a penalty double the

amount of the judgment in order to perfect an appeal from a judgment rendered by a Justice of the Peace in a civil action. In addition, plaintiffs sought injunctive relief to prevent execution on a judgment entered by defendant, George Warner, Justice of the Peace, in favor of the defendant, Graham Motor Company, and against plaintiff, in a civil action on contract, and requested that the time to appeal from the judgment be tolled.

Relief was sought pursuant to 42 U.S.C. §§ 1983, 1981 and 1988 and jurisdiction was invoked under 28 U.S.C. § 1343(3) and (4). By order of this Court, entered December 30, 1969, the defendant, George Warner, Justice of the Peace, and all other justices of the peace of the State of West Virginia, were enjoined from issuing any execution on the judgment rendered against plaintiff, Clover Patterson, in the state civil suit of Graham Motor Company v. Clover Patterson, on October 23, 1969, until such time as the issues raised herein were resolved and determined. Motions for Summary Judgment and for a Stay of Continuance, filed by defendants, were deferred until the convening of a three-judge court to hear and resolve the matter.

Pursuant to 28 U.S.C. § 2284, a three-judge court was designated, and on July 3, 1972, convened to hear counsels' arguments on plaintiff's request for declaratory and injunctive relief and defendant's Motion for Summary Judgment. Set for hearing on the same date was the case of Coretta Bias v. Joe Gies, et al., Civil Action No. 70–20. This action raised the identical issue presented in the instant case. It was agreed that the decision rendered herein shall be dispositive of said Civil Action No. 70–20.

The factual allegations of the complaint were admitted in the answer and counsel for both parties agreed that no further supporting papers, depositions, affidavits, or testimony would be required, and that the matter could be submitted to the Court on the record.

The facts, which are undisputed, may be briefly summarized as follows:

In November, 1968, plaintiff purchased, under a deferred purchase money contract, a used 1959 Dodge station wagon from the defendant, Graham Motor Company, Charleston, West Virginia. The balance payable was evidenced by a negotiable promissory note. Subsequent to the delivery of the vehicle, the owner encountered numerous mechanical defects in same, and allegedly being unable to obtain satisfactory repairs from Graham Motor Company, plaintiff repudiated the agreement and ceased payment thereon. On October 23, 1969, the plaintiff appeared before Justice of the Peace, George Warner, to answer an action for money due on contract instituted by Graham Motor Company. Plaintiff, defendant therein, raised numerous defenses, including breach of warranty, fraud, and repudiation. However, judgment was awarded by said Justice of the Peace to Graham Motor Company against Clover Patterson in the amount of $300 plus costs.

An appeal from the foregoing judgment was demanded by the plaintiff. Surety bond in the penalty of $600 was set in accordance with the provisions of the West Virginia statute, Chapter 50, Article 15, Section 2. Plaintiff did not have available an individual surety or a $36 fee for a commercial bond. As a result of his inability to perfect the appeal, the judgment against plaintiff in the amount of $300 became final.

Plaintiff, Clover Patterson, was accorded a full trial on the merits of his case in the Justice of the Peace court. Having received a hearing with full opportunity to present every available defense, the Due Process Clause of the Fourteenth Amendment is satisfied. There is no requirement that the state provide appellate review. Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L. Ed.2d 36 (1972) and cases cited therein. However, appellate review of the judgment of a Justice of the Peace is made available by statute, and it is the bond

provision of same that is under attack in this proceeding.

The specific statute, Chapter 50, Article 15, Section 2, which plaintiff seeks to have declared unconstitutional reads in part:

"50-15-2 Appeal Bond

The appeal shall not be granted by the justice unless, within ten days after the judgment is rendered . . . bond with good security, to be approved by the justice, in a penalty double the amount of the judgment, is filed with him, with condition to the effect that the person proposing to appeal will perform and satisfy any judgment which may be rendered against him on such appeal . . ."

The West Virginia courts have consistently and clearly held that the above quoted statute makes the posting of a surety bond mandatory. No appeal will be granted unless a bond with good security is approved by the Justice of the Peace and filed with him. Staats v. McCarty, 130 W.Va. 240, 43 S.E.2d 826 (1947).

Plaintiff argues that the surety bond requirement of the foregoing statute results in arbitrary and invidious discrimination among individuals on the basis of wealth in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and his right to petition the government for a redress of grievances as guaranteed by the First Amendment. Defendant contends that the posting of the bond is a protection to which the person receiving judgment is entitled and further, that it serves to discourage frivolous litigation.

Presented by the facts herein are these questions: (1) Is the right to appeal the lawful judgment of a court of competent jurisdiction in a civil action absolute and uninhibited, and (2) If such appeal is not a matter of right, then to what extent and in what particulars may it be restricted and regulated. Succinctly stated, does Equal Protection

as contemplated by the Fourteenth Amendment to the Constitution forbid conditions precedent to an appeal that involve the financial ability of the judgment debtor and create a de facto classification of citizens—the rich and the poor.

■■ The idea of equality before the law for rich and poor alike is one of the oldest and most fundamental aims of our legal system. However, under the common law the courts had no authority to permit a suitor to bring or carry on an action as a pauper. La Barbera v. Hart & Crouse Co., 248 App.Div. 261, 289 N. Y.S. 567, appeal dismissed, 272 N.Y. 534, 4 N.E.2d 435. Consequently, the right of a party to proceed in forma pauperis either in the trial court or on appeal has been governed wholly by statute. Annot., 11 A.L.R.2d. Forma Pauperis Suit-Non Party, p. 607, 608. Legislatures, except where inhibited by Constitutional mandate, have had the power generally to regulate appellate procedure, including the authority to require the giving of a bond as a condition precedent to the consummation of an appeal. 4A C.J.S. Appeal & Error § 502, p. 208. In many jurisdictions, statutes have been passed requiring, as a condition precedent to taking or perfecting an appeal, that the appellant, or plaintiff in error, must give a bond, recognizance, or undertaking for payment of the judgment, order or decree. At least a substantial compliance with such statutes has been held essential to valid appeals or proceedings in error. Brown v. S. H. Kress and Co., 207 N.C. 722, 178 S.E. 248; Southern Ry. Co. v. Thomas, 182 Va. 788, 30 S.E.2d 575. Moreover, statutes restricting the appellate process have been held not to violate constitutional provisions granting the right of appeal inasmuch as they are considered merely regulatory of the method for exercising the right. Austin v. Oviedo, 92 So.2d 648 (Fla.). In addition, poverty or inability to procure sureties has been found insufficient to relieve an appellant, or plaintiff in error, from the necessity of giving an appeal bond or other

security absent statutory mandates. Going's Administratrix v. Norfolk & Western Railway Co., 119 Va. 543, 89 S.E. 914, aff'd 248 U.S. 538, 39 S.Ct. 22, 63 L.Ed. 409.

More recently, however, the constitutional guarantees of Due Process and Equal Protection have been held to require that appellate review in criminal cases, if made generally available, not be denied merely because of defendant's inability to pay the costs attendant upon the securing of such review. Eskridge v. Washington State Board of Prison Terms and Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269; Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891.

Although no court has yet clearly resolved the specific issue here involved, the Supreme Court has passed upon allied questions in some cases in this particular area of the law. These cases, hereinafter discussed, are Griffin v. Illinois, supra; Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113, and Lindsey v. Normet, supra. The latter named case is particularly pertinent to our discussion.

In Griffin v. Illinois, supra, plaintiff was convicted in a state court of armed robbery. In order to appeal a conviction in Illinois, the appellate court must be furnished with a bill of exceptions or report of the trial procedure certified by the trial judge. It is sometimes impossible to prepare such document without a stenographic transcript of the trial proceedings, which is furnished free only to indigent defendants sentenced to death. Plaintiff alleged that he was without funds to pay for a transcript and that the failure of the courts to provide it to him was a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The Supreme Court held that plaintiff's constitutional rights were violated. Justice Black, speaking for the court, used this language:

". . . Appellate review has now become an integral part of the Illinois trial system for finally adjudi-

cating the guilt or innocence of a defendant. Consequently at all stages of the proceedings, the Due Process and Equal Protections Clauses protect persons like petitioners from invidious discriminations."

It is clear from Justice Black's opinion, which studiously omits any reference to civil actions, that the Supreme Court limited the effect of its holding to criminal actions. Criminal actions, by their very nature, demand greater protections to safeguard defendants. Civil suits, however, are a vehicle by which people are given an opportunity to use a neutral government agency to adjust their differences. No deprivation of liberty is involved. Our Federal Constitution does not place civil disputes on the same plane as criminal. For this reason, this Court does not consider the Griffin case controlling on the issue herein raised. The Griffin case held simply that the Equal Protection Clause imposes an affirmative duty on the government to lift the handicaps flowing from different economic circumstances in criminal cases.

In Boddie v. Connecticut, supra, the Supreme Court held that, in view of the basic position of the marriage relationship in society, and the state monopoly on the means for dissolving that relationship, Due Process prohibits a state from denying, solely because of inability to pay court fees and costs, access to its courts to indigents, who, in good faith seek judicial dissolution of their marriage. The Court, as indicated, bases its determination therein on the Due Process Clause of the Fourteenth Amendment; not the Equal Protection Clause.

It is to be further noted that the *Boddie* case is clearly distinguishable from the case at bar. In *Boddie,* without the payment of a fee, plaintiff was not given a meaningful opportunity to be heard, appropriate to the nature of the case. Here plaintiff was afforded an opportunity to be heard, and availed himself of that opportunity. He now argues that he has an absolute right to appeal without being hampered by financial re-

quirements. Although the Court in *Boddie* cited the *Griffin* case, it emphasized that its decision went no further than to dispose of the particular case before it wherein the right to access to the courts "is the exclusive precondition to the adjustment of a fundamental human relationship—marriage." Again, it appears clear that the Supreme Court intended to limit the scope of its decision. A sales contract cannot be equated with a marriage contract. Sales contracts can be terminated without court action, marriages cannot. Nor can the initiation of a suit be equated with an appeal.

■ Moreover, as hereinbefore indicated, it is settled law that an appeal in forma pauperis is a privilege, not a right, and no requirement of Due Process is involved. Dorsey v. Gill, 80 U.S.App. D.C. 9, 148 F.2d 857 (1945), cert. den. 325 U.S. 890, 65 S.Ct. 1580, 89 L.Ed. 2003, Williams v. McCulley, 131 F.Supp. 162 (D.C.La.1955), and Nichols v. McGee, 169 F.Supp. 721 (N.D.Cal.1959), appeal dismissed, 361 U.S. 6, 80 S.Ct. 90, 4 L.Ed.2d 52.

The case most closely in point with the issues raised herein is Lindsey v. Normet, supra. In *Lindsey* appellants, tenants of appellee, refused to pay their monthly rent unless certain substandard conditions were remedied. Appellees threatened eviction. Appellants then filed a class action seeking to have the Oregon Forcible Entry and Wrongful Detainer statute declared unconstitutional. One of the provisions attacked in that action was the requirement of posting bond on appeal with two sureties in twice the amount of rent expected to accrue pending an appellate decision, the bond to be forfeited if the lower court decision is affirmed.[1] This requirement was in addition to the general appeal bond provisions of the Oregon law which are also a precondition to appeal and afford adequate protection to the landlord against loss pending the outcome of the appeal.[2] The Court, while holding that the double bond prerequisite for filing an appeal violated the Equal Protection Clause of the Fourteenth Amendment, used the following language:

"While *a State may properly take steps to insure that an appellant post adequate security before an appeal* to preserve the property at issue, *to guard a damage award already made,* or to insure a landlord against loss

---

1. "105.160 Additional undertaking on appeal. If judgment is rendered against the defendant for the restitution of the real property described in the complaint, or any part thereof, no appeal shall be taken by the defendant from the judgment until he gives, in addition to the undertaking now required by law upon appeal, an undertaking to the adverse party, with two sureties, who shall justify in like manner as bail upon arrest, for the payment to the plaintiff if the judgment is affirmed on appeal of twice the rental value of the real property of which restitution is adjudged from the commencement of the action in which the judgment was rendered until final judgment in the action."

2. "19.040 Form of undertaking on appeal; conditions for stay of proceedings; enforcement against sureties on dismissal of appeal. (1) The undertaking of the appellant shall be given with one or more sureties, to the effect that the appellant will pay all damages, costs and disbursements which may be awarded against him on the appeal; but such undertaking does not stay the proceedings, unless the undertaking further provides to the effect following:

(a) If the judgment or decree appealed from is for the recovery of money, or of personal property or the value thereof, that if the same or any part thereof is affirmed, the appellant will satisfy it so far as affirmed.

(b) If the judgment or decree appealed from is for the recovery of the possession of real property, for a partition thereof, or the foreclosure of a lien thereon, that during the possession of such property by the appellant he will not commit, or suffer to be committed, any waste thereon, and that if such judgment or decree or any part thereof is affirmed, the appellant will pay the value of the use and occupation of such property, so far as affirmed, from the time of the appeal until the delivery of the possession thereof, not exceeding the sum therein specified, to be ascertained and tried by the court or judge thereof. . . . "

of rent if the tenant remains in possession, the double-bond requirement here does not effectuate these purposes since it is unrelated to actual rent accrued or to specific damage sustained by the landlord." [Emphasis Supplied]

In *Lindsey*, it was not the purpose of the double bond requirement to protect the damage award, or the property to which an appellee might rightfully be entitled because of a lower court judgment. It was unrelated to the actual rent accrued or to the specific damage sustained by the landlord. Rather, the stakes were automatically doubled when a tenant sought to appeal an adverse decision. The end result of the application of the Oregon statute was to penalize an appellant who lost an appeal that may very well have been prosecuted in good faith. However, it should be noted that the Court in the very language used to strike down the special bond requirement of the Oregon statute under attack in *Lindsey*, inferentially approves the general Oregon bond statute which is substantially similar to that under attack in the case at bar.

■ The purpose of the bond provided by West Virginia law is to protect the person receiving the judgment in the Justice of the Peace Court; it is not penal in nature. The bond, given pursuant to the statute in question, is security which the statute substitutes for the advantage which plaintiff gains by his judgment. Chewning v. Tomlinson, 105 W.Va. 76, 141 S.E. 532. Its requirements are substantially the same as those of the general Oregon appeal bond statute, and serves the same purpose. While it is true that the general appeal bond statute of the State of Oregon was not under attack in *Lindsey*, and whether it was violative of the Equal Protection Clause of the Fourteenth Amendment was not directly in issue, yet the language of the Court above quoted is so clear and unequivocal there can be little doubt of the Court's views. It is also to be noted that Justices Douglas and Brennan who filed dissents did not take issue

with the requirements, or the purpose of the general Oregon appeal bond statute.

As is urged herein, it is quite true that our legal system has recently undergone profound changes in keeping with today's special emphasis on individual rights, growing out of which has been the vindication of basic protections for the poor and the deprived among us. A person in that category may proceed in a criminal action in forma pauperis, and he may institute civil actions in forma pauperis. Responsible members of a democratic society are fully agreed that every citizen, without regard to his ability to pay or the possible frivolity of his alleged claim, is entitled to a fair and just adjudication of his grievance, whatever it may be, in accordance with the constitutional principles of Due Process and Equal Protection. In the instant case, however, there is no contention that plaintiff was denied due process or other basic right during the course of litigation. He complains only that the bond prerequisite to appeal denies him Equal Protection of the Laws under the Fourteenth Amendment, and his right to petition his government for a redress of grievances under the First Amendment.

■■ It is the Court's opinion that any First Amendment rights which may be indicated under the facts here are fully merged in, and circumscribed by, the Equal Protection of the Laws requirement of the Fourteenth Amendment. It is our further opinion that the concept of Equal Protection does not include full and unrestrained appellate review of an initial adjudication which afforded Due Process. Equal Protection, as a constitutional requirement, by its very nature, cannot be literally interpreted. It must be viewed and weighed in the light of certain basic factors inherent in the functioning of a workable and fair system of justice. Included therein are equality, uniformity, efficiency, and practicality. Constitutional protections are not absolute. They must yield to accommodation when overriding interests of public policy are at stake. The Courts have consistently recognized that

parties who prevail in the lower court are entitled to some protection of their property interests when the losing party decides to appeal. Justice Burton speaking for the Court in National Union of Marine Cooks, etc. v. Arnold, 348 U.S. 37, 75 S.Ct. 92, 99 L.Ed. 46, clearly expressed this premise in these words: "Where the effectiveness of a money judgment is jeopardized by the judgment debtor, he has no constitutional right to an appeal extending that frustration." Moreover, taxpayers who must shoulder a major portion of the costs of in forma pauperis proceedings are also entitled to consideration in placing reasonable restrictions and conditions on the appellate process.

■ Accordingly, we conclude that the provisions of Chapter 50, Article 15, Section 2, of the Code of West Virginia of 1931, as amended, required to be met as a prerequisite to perfecting an appeal from the final judgment of a Justice of the Peace in West Virginia is not violative of the Equal Protection of the Laws Clause of the Fourteenth Amendment of the Constitution of the United States, and is therefore constitutional and valid, and consequently, the relief sought herein by plaintiff is denied.