[No. B048466. Second Dist., Div. One. Aug. 20, 1990.]

JANE DOE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ROMAN POLANSKI, Real Party in Interest.

**COUNSEL**

Lawrence Silver, Mark E. Field and Shula Roth-Barash for Petitioner.

No appearance for Respondent.

Finkle, Hersh & Stoll, David G. Finkle and Gary Micon for Real Party in Interest.

**OPINION**

**DEVICH, Acting P. J.**—May a fugitive from justice appear through counsel when sued in a civil action based on conduct for which he was convicted in a criminal prosecution? We conclude that the due process clause of the Fourteenth Amendment to the United States Constitution[1] compels an

---

[1] Section 1 of the Fourteenth Amendment to the United States Constitution provides, in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or

affirmative response to this question and therefore deny Jane Doe's petition for a peremptory writ of mandate.

## BACKGROUND

In an indictment filed March 24, 1977, Roman Polanski was charged, with respect to Doe, with furnishing a controlled substance to a minor,[2] lewd or lascivious act upon a child under 14, unlawful sexual intercourse, rape by use of drugs, oral copulation, and sodomy.

On August 8, 1977, Polanski pleaded guilty to one count of unlawful sexual intercourse. Criminal proceedings were adjourned, and the trial court instituted mentally disordered sex offender proceedings. (Former Welf. & Inst. Code, § 6300 et seq.) However, prior to sentencing, Polanski fled to France and has never returned.

On December 30, 1988, Doe, then 25 years old, filed a complaint against Polanski alleging causes of action for "sexual assault and battery; assault and battery; intentional infliction of emotional distress; negligent infliction of emotional distress; false imprisonment; [and] seduction."

On June 22, 1989, through counsel, Polanski answered Doe's complaint, generally denying the allegations and raising several affirmative defenses.

On November 22, 1989, Doe filed a motion to have Polanski's answer stricken and a default entered against him. The motion was denied.

Thereafter, Doe petitioned this court for a peremptory writ of mandate. On March 15, 1990, we issued an alternative writ of mandate to consider whether the trial court was compelled to grant Doe's motion.

## DISCUSSION

Relying principally on *Molinaro v. New Jersey* (1970) 396 U.S. 365 [24 L.Ed.2d 586, 90 S.Ct. 498] and *United States v. $129,374 in U.S. Currency* (9th Cir. 1985) 769 F.2d 583, Doe argues that California should not extend its protection to a person who has flagrantly snubbed our judicial system.

In *Molinaro v. New Jersey, supra,* 396 U.S. 365, following a criminal conviction, the appellant, who had been free on bail, failed to surrender to

---

immunities of citizens of the United States; *nor shall any State deprive any person of life, liberty, or property, without due process of law*; nor deny to any person within its jurisdiction the equal protection of the laws." (Italics added.)

[2] At the time of the criminal acts charged, Doe was 13 years old.

state authorities. In dismissing the appeal from the judgment of conviction, the United States Supreme Court stated: "No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims." (*Id.* at p. 366 [24 L.Ed.2d at pp. 587-588].)

This disentitlement doctrine was later extended to civil matters. In *United States* v. *$129,374 in U.S. Currency, supra,* 769 F.2d 583, 588, a case involving a motion to intervene in civil forfeiture proceedings, the court noted: " 'there is no indication in the Court's decision [in *Molinaro*] that the [disentitlement doctrine] has any less vitality in civil cases.' [Citation.] Rather, . . . '[t]o the contrary, . . . the [*Molinaro*] rule should apply *with greater force* in civil cases where an individual's liberty is not at stake.' [Citations.]" (See also *National Union* v. *Arnold* (1954) 348 U.S. 37 [99 L.Ed. 46, 75 S.Ct. 92]; *Weeks* v. *Superior Court* (1921) 187 Cal. 620 [203 P. 93]; *MacPherson* v. *MacPherson* (1939) 13 Cal.2d 271 [89 P.2d 382]; *Travis* v. *Travis* (1948) 89 Cal.App.2d 292 [200 P.2d 843]; *Estate of Scott* (1957) 150 Cal.App.2d 590 [310 P.2d 46].)

■ Doe's reliance on disentitlement doctrine cases is misplaced. In each, the relevant proceeding was *initiated by the fugitive.*[3] In the matter before us, it was Doe who initiated the lawsuit, bringing Polanski into the civil arena of the California court system. Having appeared to defend himself, Polanski does not seek relief in his own right; rather, he merely seeks the opportunity to be heard and present any defenses he may have to Doe's causes of action.

Although we have not encountered any case law which directly controls Doe's petition, guidance is offered by analogy to the body of law concerning findings of contempt, the seminal case of which is *Hovey* v. *Elliott* (1897)

---

[3] In *United States* v. *$129,374 in U.S. Currency, supra,* 769 F.2d 583, the motion to intervene and the appeal was brought by the conservator of the fugitive's estate. The court noted that, under applicable state law, such a conservator "stands in [the] shoes" of the fugitive. (*Id.* at p. 586.) Moreover, although the government is normally designated as the plaintiff in federal narcotics-related civil forfeiture proceedings, it may satisfy its low burden of proof by demonstrating probable cause that "moneys, negotiable instruments, securities, or other things of value [were] furnished or intended to be furnished . . . in exchange for a controlled substance . . . ." (21 U.S.C. § 881(a)(6).) The burden then shifts to the defendant or "claimant" to demonstrate that the property to be forfeited does not fall within the ambit of the pertinent forfeiture statute. (21 U.S.C. § 881(d); 19 U.S.C. § 1615.) Thus, the defendant in a civil forfeiture proceeding is not in the same position as a defendant in an ordinary action for damages.

167 U.S. 409 [42 L.Ed. 215, 17 S.Ct. 841]. *Hovey* involved a situation where the Supreme Court of the District of Columbia ordered the defendants to " 'pay over to the registry of the court' " a sum of money they were given by a receiver at an earlier point in an action filed against them. (*Id.* at p. 411 [42 L.Ed. at p. 219].) Upon the defendants' failure to comply with this order, the court found them in contempt and further ordered " . . . 'the answer filed by [the defendants] in the cause be stricken out, and that [the] cause proceed as if no answer therein had been interposed . . . .' " (*Ibid.*) The court subsequently entered a decree *pro confesso* against the defendants.

Following the New York Court of Appeals' refusal to extend full faith and credit to the decree, the United States Supreme Court posed the issue before it as follows: "[W]hether a court possessing plenary power to punish for contempt, unlimited by statute, has the right to summon a defendant to answer, and then after obtaining jurisdiction by the summons, refuse to allow the party summoned to answer or strike his answer from the files, suppress the testimony in his favor, and condemn him without consideration thereof and without a hearing, on the theory that he has been guilty of a contempt of court." (167 U.S. at p. 413 [42 L.Ed.2d at p. 219].) In holding that the action of the District of Columbia Supreme Court violated the defendants' right to due process, the United States Supreme Court stated: "The fundamental conception of a court of justice is condemnation only after hearing. To say that courts have inherent power to deny all right to defend an action and to render decrees without any hearing whatever is, in the very nature of things, to convert the court exercising such an authority into an instrument of wrong and oppression, and hence to strip it of that attribute of justice upon which the exercise of judicial power necessarily depends." (*Id.* at pp. 413-414 [42 L.Ed.at p. 220].)[4]

Polanski's reprehensible, irresponsible, and unlawful absence from this country, and hence his evasion of sentencing in the criminal action, are unrelated to the merits of Doe's civil action. (See *Phoceene Sous-Marine* v. *U.S. Phosmarine, Inc.* (9th Cir. 1982) 682 F.2d 802, 806.) Polanski has not failed to comply with any discovery requests or otherwise interfered with Doe's ability to collect evidence.[5] Moreover, absent properly served notice,

[4] As subsequently noted by the United States Supreme Court in *National Union* v. *Arnold, supra*, 348 U.S. at page 42, footnote 5 [99 L.Ed. at page 51], "The deprivation of a litigant's right to present a defense has been upheld, not as a punishment for contempt as prohibited in *Hovey* v. *Elliott, supra*, but rather as a result of the litigant's failure to produce evidence, his violation of a rule of procedure, or other action justifying a judgment of default against him. [Citations.]"

[5] Code of Civil Procedure sections 2027 and 2028 permit the oral or written depositions of persons residing in foreign countries. Moreover, in appropriate cases, a party may be ordered to attend a deposition at a location which is more than 150 miles from the deponent's residence. (Code Civ. Proc., § 2025, subd. (e)(3).) Thus, contrary to the dissenting opinion's

Polanski has no obligation to personally appear at the trial. (Code Civ. Proc., § 1987, subd. (b); *Silvagni* v. *Superior Court* (1958) 157 Cal.App.2d 287, 291-292 [321 P.2d 15].)

In sum, *at this point in the litigation* Polanski has committed no act or omission which would justify the sanction of depriving him of the ability to offer a defense to Doe's claim for damages. If we were screenwriters drafting a script based on the history of Polanski's conviction and flight from punishment, incorporating the civil and criminal aspects of his actions, we would surely create a scenario where all the characters get their "just deserts" without regard to the protective safeguards of the Constitution. However, as jurists, we are bound by constitutional principles and must apply them evenhandedly, regardless of our personal opinions of any of the litigants.

For the foregoing reasons, we find that to strike Polanski's answer and enter a default judgment against him based solely on, and as a punishment for, his fugitive status would violate the due process clause of the Fourteenth Amendment to the United States Constitution. Accordingly, the trial court properly denied Doe's motion.[6]

### DISPOSITION

The alternative writ of mandate is discharged. Jane Doe's petition for a peremptory writ of mandate is denied.

Taylor, J.,* concurred.

**ORTEGA, J.**—I respectfully dissent. In my view, the disentitlement doctrine applies to a crime victim's damages action against a fugitive defendant based upon the admitted commission of a felony.

Fugitives from justice are disentitled from claiming the privileges afforded to incarcerated persons. For example, a felon who flees from the jurisdiction of our courts waives appellate review of the conviction. (*People* v. *Buffalo* (1975) 49 Cal.App.3d 838, 839 [123 Cal.Rptr. 308].) This is because courts " 'have no jurisdiction over persons charged with crime,

---

assertion, our holding does not "unintentionally aid[] Polanski's flight from justice by implicitly requiring [his] victim to travel to foreign soil for his deposition." (Dis. opn., *post*, at p. 1414, fn. omitted.)

[6]The dissenting opinion suggests that we should determine the boundaries of Polanski's right to participate in the litigation, thereby avoiding "a piecemeal resolution of the matter [which] offends the orderly processes of our courts." (Dis. opn., *post*, at p. 1414.) We decline to offer our opinion on matters not properly before us.

* Assigned by the Chairperson of the Judicial Council.

unless in custody actual and constructive. It would be a farce to proceed in a criminal cause, unless the Court had control over the person charged, so that its judgment might be made effective.' (*People* v. *Redinger* [1880] 55 Cal. 290, 298.)" (*People* v. *Buffalo, supra,* 49 Cal.App.3d at p. 839.) No denial of the federal due process clause results from the dismissal of a fugitive's criminal appeal. (*Allen* v. *Georgia* (1897) 166 U.S. 138 [41 L.Ed. 949, 17 S.Ct. 525] [order of dismissal sustained after fugitive attempted to revive his appeal following recapture]; see *Molinaro* v. *New Jersey* (1970) 396 U.S. 365, 366 [24 L.Ed.2d 586, 587-588, 90 S.Ct. 498].)

It logically follows that the disentitlement doctrine " 'should apply *with greater force* in civil cases where an individual's liberty is not at stake.' [Citations.]" (*United States* v. *$129,374 in U.S. Currency* (9th Cir. 1985) 769 F.2d 583, 588.) For example, California courts may deny appellate review to persons who are in contempt of court. (*MacPherson* v. *MacPherson* (1939) 13 Cal.2d 271, 277 [89 P.2d 382].) As our Supreme Court stated: "A party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders and processes of the courts of this state. [Citations.]" (*Ibid.*) This district previously denied appellate review in *Estate of Scott* (1957) 150 Cal.App.2d 590, 594 [310 P.2d 46], stating: "It is contrary to the principles of justice to permit one who has flaunted the orders of the courts to seek judicial assistance." As noted therein, state courts possess the " 'inherent power to use [their] processes to induce compliance with a supplemental order reasonably issued in aid of execution.' " (*Id.* at p. 594.)

The majority opinion attempts to distinguish *United States* v. *$129,374 in U.S. Currency, supra,* 769 F.2d 583 and other similar cases, citing the burden-shifting aspect of the forfeiture proceedings and the designation of the property owner as "claimant." (21 U.S.C. § 881(a)(6).) Despite these characteristics of forfeiture proceedings, however, a property owner who has notice of the forfeiture proceedings and chooses to flee from the jurisdiction of the courts thereby waives the right of "*defending* the forfeiture action." (*United States* v. *$129,374 in U.S. Currency, supra,* 769 F.2d at p. 589, italics added.) There is no valid distinction between this case and *United States* v. *$129,374 in U.S. Currency.*

By distinguishing a defendant in a civil forfeiture proceeding from a defendant in an "ordinary" action for damages, the majority opinion hints that Doe's action fails to satisfy some nexus requirement with respect to Polanski's criminal conviction. But under the facts of this case, we need not decide whether the disentitlement doctrine imposes a nexus requirement. (See *United States* v. *$129,374 in U.S. Currency, supra,* 769 F.2d at p. 588; *Conforte* v. *C.I.R.* (9th Cir. 1982) 692 F.2d 587, 590.) The unlawful sex

crime to which Polanski pled guilty involves the identical conduct alleged in Doe's sexual assault and battery cause of action. Accordingly, there could be no closer nexus than that present here.

At first blush, it appears Doe may have waited beyond the limitations period before filing suit. Although the majority opinion does not expressly mention the statute of limitations, it points out Doe waited until she was 25 years old to file this action. But this is not a case where a claimant who is otherwise barred from bringing an action can do so only because the defendant is a fugitive. California tolls the limitations period for the commencement of actions during the period the fugitive is absent from this state. (Code Civ. Proc., § 351.)[1] In fact, the Supreme Court has determined that the absent defendant's amenability to service of process is irrelevant under this section. (*Dew* v. *Appleberry* (1979) 23 Cal.3d 630, 632 [153 Cal.Rptr. 219, 591 P.2d 509].)

Although Polanski raised the statute of limitations in his answer, the trial court sustained Doe's demurrer with respect to this affirmative defense. The trial court concluded the limitations period is tolled under section 351 while Polanski remains absent from California.

In addition to section 351, section 340.3 indicates that where judgment is not pronounced against the convicted felon because he has fled from this state, the victim's time for bringing a damages action based upon the underlying felony does not commence until the fugitive returns and judgment is pronounced. Section 340.3, an urgency statute, took effect on September 20, 1983, after the passage of Proposition 8 (the Victims' Bill of Rights, Cal. Const., art. I, § 28).[2]

---

[1] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

Section 351 provides: "If, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the terms herein limited, after his return to the State, and if, after the cause of action accrues, he departs from the State, the time of his absence is not part of the time limited for the commencement of the action."

[2] Section 340.3 states: "Unless a longer period is prescribed for a specific action, in any action for damages against a defendant based upon such person's commission of a felony offense for which the defendant has been convicted, the time for commencement of the action shall be within one year after judgment is pronounced. If the sentence or judgment is stayed, the time for the commencement of the action shall be tolled until the stay is lifted. For purposes of this section, a judgment is not stayed if the judgment is appealed or the defendant is placed on probation."

In this case, Polanski fled before pronouncement of judgment in his underlying felony prosecution. If section 340.3 applies, the limitations period for Doe's damages action based on the underlying felony to which Polanski pled guilty will not even commence until he returns for sentencing. There may be a retroactivity issue, however, since Doe reached the age of majority in 1981, two years before enactment of section 340.3. (See *Gallo* v. *Superior Court* (1988) 200 Cal.App.3d 1375, 1378-1384 [246 Cal.Rptr. 587] [no retroactive revival of a

In my view, either Polanski has waived the right to appear and defend against the victim's action which directly arises from the underlying felony to which he pled guilty, or he should be treated as any other nonresident defendant who appears through counsel. The majority's approach falls somewhere in between. On the one hand, the majority opinion unintentionally aids Polanski's flight from justice by implicitly requiring Polanski's victim to travel to foreign soil for his deposition.[3] And on the other hand, the majority opinion accedes to Polanski's demand to defend while remaining a fugitive without guaranteeing him appellate review.

Although the majority opinion declines to apply the disentitlement doctrine at this stage of the litigation, Polanski's future rights remain uncertain. The majority opinion bases its analysis in part on the distinction between a plaintiff or proponent (who the majority would bar from using the judicial system to take the offensive) and a defendant (who the majority holds must be allowed to protect himself). Strictly construed, the majority opinion would allow Polanski to use only defensive measures and would bar him from taking affirmative steps such as filing an appeal[4] and seeking extraordinary relief by way of a writ petition. But he certainly would be allowed to respond, as here, to any writ petition filed by his opponent and to an appeal filed by Doe should the judgment be against her. Would he be allowed to file a cross-complaint or allege affirmative defenses? If the judgment is against him, may he bring a motion for a new trial? Are such actions to be construed as defensive tactics or do they constitute taking the offensive? Too many questions are unresolved. This will be anything but an orderly trial because the trial judge will have to resolve such matters which will surely arise. Undoubtedly, we will be called upon numerous times during the trial to resolve such matters on writ petitions. The majority opinion's middle ground approach leads to a piecemeal resolution of the matter and offends the orderly processes of our courts. Polanski may be allowed to do some things an ordinary litigant can do, but not others. The only reasonable approach is to either let him defend himself fully or not at all.

---

personal injury cause of action already barred by the statute of limitations when § 340.3 took effect].)

[3] The majority opinion points out at footnote 5, *ante*, that Polanski could be ordered to attend a deposition in Los Angeles. Breathes there a soul who honestly believes he would obey such an order? Obviously, the only way to take his deposition is to travel to his haven. If, ultimately, his answer is stricken for refusal to obey such an order (see § 2023), we end up with his forfeiture of his right to defend himself, the same result which is right now justified by his fugitive status.

[4] This district dismissed an appeal under analogous facts in *Estate of Scott, supra*, 150 Cal.App.2d 590, 594. Moreover, the United States Supreme Court has stated that "[w]hile a statutory review is important and must be exercised without discrimination, such a review is not a requirement of due process. [Citations.]" (*National Union v. Arnold* (1954) 348 U.S. 37, 43 [99 L.Ed. 46, 51, 75 S.Ct. 92].)

Polanski seeks to dictate the terms of his participation in our judicial system, choosing to take advantage of our processes only when it suits his convenience. He expects our courts and his victim to accede to his demands so he may have his cake and eat it too.

In my opinion, Polanski waived his right to appear through counsel and defend against his victim's damages action when he flaunted the authority and orders of our courts by fleeing from our jurisdiction. Justice demands that a court should not bow to the flagrant demands of a fugitive who refuses to acknowledge its authority.

I would grant the peremptory writ of mandate.

Petitioner's application for review by the Supreme Court was denied October 30, 1990. Mosk, J., and Arabian, J., were of the opinion that the application should be granted.