[Nos. A061317, A062422. First Dist., Div. Three. June 2, 1994.]

Adoption of JACOB C. et al., Minors.
PAULA C., Plaintiff and Respondent, v.
SUSAN C., Defendant and Appellant;
NANCY B. et al., Movants and Appellants.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III and V.

618

**COUNSEL**

Robert A. Roth, under appointment by the Court of Appeal, and Allan R. Frumkin for Defendant and Appellant and for Movants and Appellants.

Shirley D. Jacobs and Melinda H. Frey for Plaintiff and Respondent.

**OPINION**

**MERRILL, Acting P. J.**—In these consolidated appeals, Susan C. and movants Nancy B. and Aleda D., appeal from a final judgment granting the petitions of respondent Paula C. for termination of Susan's parental rights and for a stepparent adoption, and denying the motion of movants to intervene. Susan also appeals from an earlier order barring her participation in the hearing on the petitions. Because we have concluded that the trial court erred in not appointing counsel for the minors, Jacob C. and Ada C.,

and in failing to conduct an in-chambers interview with Jacob to determine his feelings and thoughts, we reverse the judgment and remand the action to the trial court with directions to appoint counsel for the minors and to conduct a new hearing, including an in-chambers interview with Jacob. The order barring Susan's participation in the hearing on the petitions is affirmed. In the unpublished portion of this opinion we affirm the order denying the motion of movants for leave to intervene.

I

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant Susan C. and James C. were married in November 1977 and separated in October 1983. Their son, Jacob, was born on January 6, 1981. On February 21, 1984, four months after Susan and James separated, their daughter, Ada, was born.

Following the parties' separation, Susan had physical custody of the children and James exercised informal visitation with Jacob. In April 1985, as a result of disputes between the parties, James obtained an order granting him visitation with Jacob for one week per month. No visitation was set for James to see Ada, and James did not see Ada until March 1986, when he paid a visit to the children with his girlfriend and future wife, Paula C. James and Paula were married in September 1987.

During 1986, disputes arose between the parties over visitation, childcare, and appropriate education for the children. Susan and various members of her family filed numerous reports alleging that James and Paula had physically and sexually abused the children; James and Paula denied these accusations. None of the law enforcement and social service agencies found any basis in fact for these reports.

In April 1987, following protracted litigation over custody and visitation, including extensive court-ordered evaluations and home studies, the Kern County Family Law Court awarded physical custody of Jacob to James. In January 1988, the court also awarded James custody of Ada. In February 1988, the Kern County court affirmed these rulings on a basis that an award of physical custody to James was in the children's best interest. Susan was granted visitation rights. No order was made obligating Susan to provide child support.

Shortly after the January custody order, Susan disappeared with Ada. Susan has remained concealed and a fugitive from justice, and neither she

nor Ada has been seen since January 1988. The Kern County District Attorney's office filed a criminal complaint charging Susan with felony child concealment and child detention with intent to deprive James of custody (Pen. Code, §§ 277, 278.5). The disappearance of Ada has resulted in an ongoing investigation, and there is an outstanding warrant for Susan's arrest for felony violation of a custody order. At the time of the proceedings in this case, Susan and Ada had been missing for about five years. During this period, Susan has had no communication with James and Paula, and no known contact with Jacob.

In October 1992, Paula filed the petitions in this case to terminate Susan's parental rights as to both children, and for her own stepparent adoption of the children. Notification of the petition was published and served at Susan's last known addresses, including the home of Susan's parents and of one of her sisters. Susan's sisters Nancy B. and Aleda D. filed a motion for leave to intervene, alleging that they had an interest in the proceeding and were acting on behalf of Susan under a power of attorney that she had executed prior to her disappearance. In their reply memorandum to Paula's opposition to the intervention motion, movants stated that the trial court should appoint independent counsel on behalf of the minor children. After a hearing on February 2, 1993, the trial court denied the motion to intervene.

The petitions were referred to the Contra Costa County Probation Department for investigation. In its initial report, dated December 10, 1992, the probation department said that Jacob objected to the petition, and that Ada was unavailable for evaluation because she had been concealed by Susan.

A subsequent probation department report, filed on February 18, 1993, stated that when interviewed in October 1992, Jacob was emotionally distressed about the loss of his mother, and expressed the fear that if he were to be adopted by Paula, he would never see his mother again. The report then stated that four months later, after receiving individual counseling, Jacob had very clearly outlined his reasons to go ahead with the petition and be adopted by Paula. Among other things, Jacob stated that his father had assured him that he could still see his mother if "someone [was] with him to make sure she did not run away with him"; that granting the petition would result in less stress for his father, who suffers from colitis; that if anything happened to his father, he could choose to live with either Paula or his stepbrother Bill; that "[i]f his mom really wanted to see him, she would have come out of hiding when his dad made a deal to drop the charges if she gave Ada back"; and that his father had always kept his word, and could be trusted to do what he promised.

Aside from interviewing Jacob, the county social worker met with James and Paula, and attempted to contact Susan. Although Susan's family received a letter from the probation department, there was no response. The

probation department recommended that Paula's petition seeking to have Jacob declared free from custody and control of his mother, Susan, be granted. The probation department recommended that the petition concerning Ada be continued until her whereabouts became known and she could be interviewed.

The trial court issued an order to show cause requiring Susan to appear in person on March 15, 1993, and show cause why she should not be adjudged in contempt of court for failure to appear, and why the action should go forward as a contested hearing if she did not personally appear. On March 15, 1993, Susan's attorney made a general appearance on her behalf, stating that he had been in direct contact with Susan. However, Susan never personally appeared, and never indicated any intention of making an appearance. The trial court ruled that because of her counsel's appearance on her behalf, Susan was not in contempt of court. Nevertheless, it determined that she could not contest the matter unless she made a personal appearance, and that unless she did so, it would proceed as an uncontested matter.

On March 17, 1993, prior to the hearing on the petitions, the trial court heard further argument from Susan's attorney. In reply to his request that independent counsel be appointed for the two children, the trial court stated: "In regard to the appointment of counsel, the Court does not feel that appointment of counsel for the minor children is appropriate under [Civil Code section] 237.5 and that the Court feels there hasn't been any showing that counsel should be appointed." In the uncontested hearing on Paula's petitions, from which Susan's attorney was excluded, both James and Paula testified that for a period of approximately five years Susan had not exercised her visitation rights, had not initiated any contact with Jacob, and had not written or telephoned him. They also testified that they would permit Jacob to see his mother if she came out of hiding, if he wanted to do so.

At the conclusion of the hearing, the trial court issued a memorandum decision in which it ruled that the parental rights of Susan were terminated as to Jacob, and that Jacob is amenable to adoption by Paula. The court made a tentative ruling that parental rights of Susan were terminated as to Ada and that Ada is amenable to adoption. It was provided that the tentative ruling as to Ada would be reviewed in 60 days to determine whether Susan appeared to contest the ruling. On May 11, 1993, the trial court filed a judgment in which it ordered: "1. That the child [Jacob C.] is freed from the custody and control of [Susan C.] and that the petition for adoption filed by [Paula C.] shall be granted pursuant to the adoption decree filed herewith; [¶] 2. That the court shall reserve jurisdiction over the issue of declaring the minor [Ada C.] free from parental control." It does not appear from the record that the judgment included an order concerning adoption of Ada.

## II

### DISENTITLEMENT DOCTRINE

■ Susan contends that the trial court erred in applying the disentitlement doctrine to bar her from participating in the hearing on the petition to terminate her parental rights. We disagree.

As the Supreme Court stated in the leading case of *MacPherson* v. *MacPherson* (1939) 13 Cal.2d 271 [89 P.2d 382]: "In secluding the children . . . and alienating them, appellant violated not only his agreement with plaintiff and the provisions of the interlocutory and final decrees of divorce, but he has also wilfully and purposely evaded legal processes and contumaciously defied and nullified every attempt to enforce the judgments and orders of the California courts, including the very order from which he seeks relief by this appeal. Such flagrant disobedience and contempt effectually bar him from receiving the assistance of an appellate tribunal. A party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders and processes of the courts of this state." (*Id.*, at p. 277.)

Susan insists that this principle is inapplicable to her, since it was used to deny her the right to be heard in opposition to the petition to terminate her parental rights, and to defend herself at trial. Her argument runs afoul of the one salient fact in this case: no one has prevented Susan from appearing and contesting the petitions in this case. She has received both notice and an opportunity to be heard, the essentials of procedural due process; she alone now possesses the power to end her exclusion from the hearing, simply by coming out of hiding and making a personal appearance. Her refusal to do so clearly constitutes precisely the kind of "flagrant disobedience and contempt" of judicial processes which bar her from seeking any court assistance in hearing her claims.

The case on which Susan relies, *Doe* v. *Superior Court* (1990) 222 Cal.App.3d 1406 [272 Cal.Rptr. 474], is readily distinguishable. In that case, the appellate court held that the disentitlement doctrine did not bar a fugitive from justice from defending himself through an attorney in a civil suit, because the fugitive's "reprehensible, irresponsible and unlawful absence from this country, and hence his evasion of sentencing in the criminal action, are unrelated to the merits of Doe's civil action." (At p. 1410.) The fugitive had not failed to comply with any discovery requests, interfered with the complainant's ability to collect evidence, or committed any "act or omission which would justify the sanction of depriving him of the ability to offer a defense . . . ." (*Id.*, at pp. 1409-1411.)

In contrast, Susan's abduction of Ada, five-year disappearance, and flagrant violation of all court orders and processes are at the very heart of Paula's petitions. Susan's unlawful absence, concealment of Ada, and abandonment of Jacob, are the basis for the termination of her parental rights and the adoption order. In short, it is Susan's fugitive status which has brought about this case. Moreover, unlike the fugitive in *Doe v. Superior Court, supra,* whose whereabouts were known to the court and the opposing party, Susan has already failed to comply with discovery requests; she has not made herself available for testimony or questioning; and her continuing disappearance and concealment of Ada have clearly interfered with the petitioner's ability to collect evidence.

The disentitlement doctrine has been applied to deprive a party of the right to present a defense as a result of the litigant's violation of the processes of the court, withholding of evidence, defaulting on court-imposed obligations, disobeying court orders, or other actions justifying a judgment of default. (*National Union v. Arnold* (1954) 348 U.S. 37, 42, fn. 5 [99 L.Ed. 46, 51, 75 S.Ct. 92].) The case for application of the doctrine is most evident where, as here, the party is a fugitive who refuses to comply with court orders or make an appearance despite being given notice and an opportunity to appear and be heard. In the instant case, Susan was not only given an opportunity to appear, she was under court order to do so.

Thus, in *United States v. $129,374 in U.S. Currency* (9th Cir. 1985) 769 F.2d 583, certiorari denied *sub nom. Geiger v. United States* (1986) 474 U.S. 1086 [88 L.Ed.2d 901, 106 S.Ct. 863], the Ninth Circuit Court of Appeals denied a conservator's motion to intervene in a forfeiture proceeding on behalf of the estate of a fugitive. The court reasoned that because the fugitive himself was barred from advancing any claim or defense in the proceeding as a result of his fugitive status, the conservator of his estate must suffer the same consequence when he sought to advance the same claim or defense. The federal appellate court specifically pointed out that its holding did not result in any further prejudice to the fugitive's interests. "It is important to recognize that [the fugitive] has complete control over the protection of his property interests in this forfeiture proceeding; if he finds his interests are sufficiently worth defending, he can terminate his fugitive status and present his own defense. This is not a situation in which a conservator has been appointed to represent someone who is incapable, either physically, mentally or legally (such as a minor), of adequately representing his interests. Here, [the fugitive] is solely responsible for his plight." (769 F.2d at pp. 587-588.) Clearly, the same reasoning applies in the instant case.

III*

DENIAL OF MOTION TO INTERVENE*

. . . . . . . . . . . . . . . . . . . . . . .

IV

APPOINTMENT OF COUNSEL FOR MINOR CHILDREN

 Susan contends that the trial court erred in refusing to appoint independent counsel for the minors, and in failing to conduct an in camera interview with Jacob. Paula responds that the trial court took the best interests of the children into account, and therefore did not err either in refusing to appoint independent counsel to represent them, or in failing to interview Jacob in chambers.

Under Civil Code former section 237.5, in effect at the time of this case, the trial court at the commencement of a termination hearing was required to consider whether the interests of the minors require the appointment of counsel to represent them.[1] Here, the record shows that the trial court did consider this issue, but the extent of its ruling was that appointment of counsel for the minor children was not "appropriate" under the statute, and "there hasn't been any showing that counsel should be appointed."

 The Supreme Court has held that the trial court's discretion on this issue is limited; it "must exercise its discretion" to appoint counsel for a minor in termination proceedings absent an immediate showing that counsel is *not* required to protect the child's interests. (*In re Richard E.* (1978) 21 Cal.3d 349, 354 [146 Cal.Rptr. 604, 579 P.2d 495]; *In re Mario C.* (1990) 226 Cal.App.3d 599, 606 [276 Cal.Rptr. 548]; *Adoption of Michael D.* (1989) 209 Cal.App.3d 122, 135 [256 Cal.Rptr. 884].) However, error in failing to appoint counsel is not reversible in the absence of a showing of prejudice. (*In re Mario C., supra,* 226 Cal.App.3d at p. 606; *In re Richard E., supra,* 21 Cal.3d at p. 354.) Accordingly, we must determine whether the trial court's failure to appoint counsel for Jacob and Ada adversely affected their rights and interests to the extent that a miscarriage of justice occurred.

Under the circumstances of this case, we have determined that the trial court was in error in failing to appoint counsel for the minors, and that the

---

*See footnote, *ante,* page 617.

[1] Virtually identical language is now found in Family Code section 7861, operative January 1, 1994.

error cannot be considered harmless. First, this was a fiercely contested matter, pitting the two natural parents of the minors against each other in their struggle for the children. Much more than merely visitation and custody were at stake. Termination of Susan's parental rights to Jacob and Ada could effectively cut off the children's relationship with their mother permanently.

Second, this case was even more unusual in that one of the parents was barred from contesting the petitions. Whatever we may think of Susan's motivations and behavior, the fact remains that because of what she has chosen to do, the termination proceedings were uncontested. We cannot disregard the interests of the children because of the conduct of their mother.

Third, the trial court's failure to interview Jacob in accordance with Civil Code former section 234 was erroneous.[2] Under this statute, except in a limited situation not applicable here, any child 10 years of age or older *must* be interviewed by the court in chambers regarding the child's feelings and thoughts concerning the custody proceedings and the child's parents. The trial court's failure to conduct this interview makes it more likely that the absence of independent counsel prejudiced the interests of the minors. We note that in the initial interviews with Jacob by the probation department, he expressed clear opposition to Paula's petitions. He only changed his mind when he was assured that termination of his mother's parental rights would not result in his inability to see her. Although James and Paula have assured Jacob and the court that they have no desire to deny Jacob the opportunity to see Susan, the fact remains that if her parental rights are terminated, James and Paula will be under no obligation to permit Jacob to see his mother. Jacob was entitled to have independent counsel to explain to him the true consequences of his acquiescence in the granting of the petition and adoption order, and to have the court make inquiry as to his feelings and thoughts in regard to such a result. The views of a child of the age of Jacob may be invaluable to the court in arriving at an appropriate disposition. For these views to be meaningful, it is imperative that the child has a reasonable understanding of how the rights and responsibilities of the interested parties will be affected, should the petition be granted.

We recognize how difficult this case is for all the parties, particularly in light of the antagonism of the families and Susan's flight with Ada. However, the best interests of the children are paramount, and this requires that they be represented by independent counsel in this unusual proceeding of such importance to their futures. We must therefore remand for appointment of counsel for the minors, and a rehearing on the issues presented by the petitions with the participation of counsel.

---

[2]The relevant portion of this statute has been reenacted in Family Code section 7891, operative January 1, 1994.

## V

### EVIDENCE OF ABANDONMENT*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VI

### DISPOSITION

The order of the trial court barring Susan's participation in the hearing on the petition for termination of her parental rights, is affirmed. The order denying the motion to intervene of Nancy B. and Aleda D., is affirmed. The judgment dated May 10, 1993, both as to Jacob and Ada, is reversed and the decree of adoption is vacated. The action is remanded to the trial court for a new hearing and with directions to appoint independent counsel for Jacob and Ada and to conduct an in-chambers interview with Jacob.

Chin, J., and Werdegar, J., concurred.

---

*See footnote, *ante*, page 617.