Filed 6/20/13  Christi F. v. Super. Ct. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHRISTI F., | D063614 |
| Petitioner, | |
| v. | (Imperial County Super. Ct. No. JJP02537) |
| THE SUPERIOR COURT OF IMPERIAL COUNTY, | |
| Respondent; | |
| IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES et al., | |
| Real Parties in Interest. | |

PROCEEDINGS in mandate after referral to a Welfare and Institutions Code

section 366.26[1] hearing.  Christopher W. Yeager, Judge.  Petition denied.

Law Offices of Thomas W. Storey and Thomas W. Storey for Petitioner.

---

1      All further statutory references are to the Welfare and Institutions Code.

Michael L. Rood, County Counsel, Geoffrey P. Holbrook and Haislip W. Hayes III, Deputy County Counsel, for Real Party in Interest Imperial County Department of Social Services.

Timothy J. Reilly, State Public Defender, Kelly Ranasinghe, Deputy State Public Defender, for Real Party in Interest Alexis H., a Minor.

Christi F. seeks review of a juvenile court order setting a hearing under section 366.26. She contends the court improperly applied the disentitlement doctrine, which deprives a party of the right to present a defense as a result of the litigant's violation of the processes of the court. Christi contends the denial of her right to present evidence and cross-examine witnesses at the 12-month review hearing requires reversal of the order terminating reunification services and setting a section 366.26 hearing.

Although the application of the disentitlement doctrine at review hearings in juvenile dependency proceedings will be rare, on this record we cannot conclude that the court erred in applying the doctrine. Accordingly, we deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2012, the Imperial County Department of Social Services (DSS) took 16-year-old Alexis H. into protective custody. Alexis was hospitalized for treatment of acute psychosis. She had been sexually molested by her mother's boyfriend. At the time she was detained, Alexis was living on the streets and trading sex for drugs and rent.

Alexis's mother, Christi, has an ongoing history of severe methamphetamine use. DSS received more than 30 referrals to child protective services concerning her children. Christi was involved in dependency proceedings in 2006. Christi said she allowed Alexis

to live with a man because her older daughter lived with him. Christi knew the man was known in the neighborhood as the "child molester." She blamed her older daughter for Alexis's drug use. Alexis's father is not involved in her life.

The juvenile court took jurisdiction over Alexis, removed her from parental custody and ordered a plan of family reunification services. Alexis remained at the Betty Jo McNeece Receiving Home (McNeece) pending placement. Her mental health condition was diagnosed as bipolar disorder, NOS and posttraumatic stress disorder, consistent with sexual abuse, cannabis abuse and methamphetamine dependence.

In March 2012, Alexis was placed at Haskell Group Home (Haskell). When Christi visited Alexis, their conversations centered on drugs and drug use. After the court imposed supervision requirements on visitation, Christi stopped visiting Alexis, which upset Alexis. Alexis said she and her mother used drugs together.

Alexis frequently left Haskell for one to four hours at a time, without explanation. Staff found methamphetamine in her room. Alexis said she had smoked methamphetamine and prostituted herself since she was 14 years old. She could not live without methamphetamine and did not want to stop using. Alexis began to run away from Haskell for longer periods of time.

In August, Alexis was severely beaten when she "short-[changed]" a drug dealer. The drug dealer decided to sell Alexis in Mexico, however a local man paid Alexis's debt in exchange for owning her "on the streets." When Alexis was treated for the assault, she had stiletto heels, a negligee and an adult sex game with her.

On September 2, Alexis was admitted into McNeece and ran away on September 5, 2012. DSS was unable to locate her. The social worker repeatedly contacted Christi to ask her if she knew Alexis's whereabouts. Christi said Alexis telephoned her from an undisclosed number. She could tell Alexis was sober and doing well by the sound of her voice. In December, a minor reported that Christi telephoned Alexis and allowed the minor to speak with her. Christi denied having Alexis's telephone number. The minor said Alexis could barely talk and appeared to be under the influence of drugs.

In January 2013, a woman identifying herself as Alexis's mother brought Alexis to the Yuma (Arizona) Regional Medical Center emergency room at approximately 1:00 a.m. Alexis said she was hearing voices telling her to hurt herself. After an initial assessment, the woman left with Alexis, saying she was taking her to a mental health facility. At approximately 11:30 a.m. the next morning, a woman identifying herself as "Karen" dropped Alexis off at a substance abuse recovery group home and said "see what you can do for her." Alexis admitted she had used methamphetamine that morning.

Alexis told a Yuma police officer she had been living in a trailer with her mother. When social worker Esther Martinez visited Alexis, Alexis appeared to be hearing voices. At times she sat without expression. She was committed to a California hospital on a section 5150 hold. Alexis admitted to daily use of methamphetamine and vodka, when available. She was not oriented to person, time or place. Her mental health condition was diagnosed as psychosis, NOS, rule out substance induced; methamphetamine and alcohol dependence, ongoing; and alcohol, marijuana and PCP abuse, ongoing.

4

In reports prepared for the 12-month review hearing, DSS described Christi's lack of compliance with her court-ordered case plan and asked the court to terminate family reunification services. DSS could not locate an appropriate treatment program in California for Alexis and recommended placement in an out-of-state treatment program.

Christi asked the court to return Alexis to her custody and terminate jurisdiction. Christi planned to enroll Alexis in a substance abuse treatment program.

At a hearing on March 4, minor's counsel noticed the parties that if the 12-month review hearing was contested, he would rely on the disentitlement doctrine as to the mother.

At the 12-month review hearing, Christi objected to the admission of hearsay in the social worker's report. Minor's counsel asked the court to apply the disentitlement doctrine to prevent Christi from presenting a defense or objecting to the report. He asked permission to call witnesses to show that Christi thwarted the processes of the juvenile court by concealing Alexis from DSS and the court. The court allowed minor's counsel to proceed.

Tena Hussey, the social worker currently assigned to Alexis's case, testified that Alexis said she stayed in a trailer in Yuma from September 2012 to January 2013. During that time, her mother brought food, methamphetamine and marijuana to her. Alexis asked Hussey to pick up her belongings from the trailer, specifically a mirror, methamphetamine, marijuana and lingerie. Alexis said, "Please don't tell my mom about the lingerie. My mom knows about the meth and the marijuana, but she doesn't know about the lingerie."

5

Esther Martinez, the previous social worker assigned to the case, testified that Alexis told her that Christi visited her in the trailer park and brought groceries to her. Alexis was using methamphetamine. Christi rented the trailer in which Alexis lived and paid the rent each month in person. Another witness saw Christi and Alexis shopping at Walmart in El Centro shortly before Christmas 2012.

Christi denied helping Alexis after she ran away from placement. Before September 5, she had returned Alexis to DSS four times, including the time she was assaulted. Christi never smoked marijuana or used methamphetamine with Alexis. She denied bringing groceries to her. Christi received telephone calls from Alexis but did not know her telephone number. Christi was not familiar with the Yuma trailer park because she spent most of her time in El Centro working and going to parenting classes. She was not in Walmart with Alexis in December 2012.

The court found that Christi was hiding Alexis from DSS in violation of the orders of the court, and the disentitlement doctrine would appear to apply. County counsel offered the social worker's report in evidence. Christi objected to the admission of hearsay and other unfounded information in the report.

County counsel called the author of the report, Esther Martinez, to testify. She said Christi completed a basic parenting class and obtained a certificate of attendance for an advanced parenting class. She did not participate in individual or family counseling. Christi did not cooperate with the social worker. She did not report Alexis's whereabouts. Christi tested positive for drugs in February 2013.

The court said, "All right. [Mother's counsel]?"

6

Mother's counsel asked, "Is the court going to allow me to cross-examine?"

The court said, "You can cross-examine as to the admissibility of or the basis for the conclusions that the witness has just drawn."

Minor's counsel objected, stating that the disentitlement doctrine operated to prevent the mother from asserting any defenses. Citing *In re Kamelia S.* (2000) 82 Cal.App.4th 1224 (*Kamelia S.*), minor's counsel argued Christi stood in an attitude of contempt of court and should not be allowed to utilize the court's legal defenses to assert her claim.

After reviewing *Kamelia S.*, the court found that Christi was barred from objecting to the admission of the social worker's report. The court found that reasonable services were offered to Christi and she made only minimal progress toward alleviating the causes necessitating Alexis's placement. The court terminated family reunification services, ordered Alexis placed at an out-of-state treatment facility and set a section 366.26 hearing.

Christi petitioned for review of the juvenile court's orders. (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452.) She asks this court to reverse the orders setting a section 366.26 hearing, and to remand the matter with directions to the juvenile court to enter orders for family reunification services and grant a new hearing on the issue. This court issued an order to show cause, the Agency responded and the parties waived oral argument.

DISCUSSION

"The disentitlement doctrine is based on the equitable notion that a party to an action cannot seek the assistance of a court while the party 'stands in an attitude of contempt to legal orders and processes of the courts of this state.' " (*In re Claudia S.* (2005) 131 Cal.App.4th 236, 244, citing *MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277.)  In the context of family and dependency cases, the disentitlement doctrine has been applied to appellate proceedings in which the party seeking relief has abducted the child in violation of trial court orders.  (*Kamelia S.*, *supra*, 82 Cal.App.4th at p. 1224 [appellate court dismissed appeal of father who had absconded with his child]; *Guardianship of Melissa W.* (2002) 96 Cal.App.4th 1293, 1299 [grandparents who took child out of country in violation of guardianship orders could not appeal denial of their guardianship petition].)  In trial court proceedings, "[t]he doctrine has also been applied to conduct that frustrates the ability of a party to obtain information it needs to protect its rights." (*In re Claudia S.*, at p. 245, citing *In re C.C.* (2003) 111 Cal.App.4th 76, 85, 86 [mother's refusal to participate in a psychological evaluation interfered with the child's legal right to have her case proceed to the permanency planning stage].)  In *Adoption of Jacob C.* (1994) 25 Cal.App.4th 617, the reviewing court affirmed the juvenile court's application of the disentitlement doctrine to bar a fugitive mother who had abducted one of her children from challenging the stepmother's petition to terminate her rights to another child unless the mother personally appeared in the action.  (*Id.* at pp. 617, 623-624.)

"The disentitlement doctrine has been applied to deprive a party of the right to present a defense as a result of the litigant's violation of the processes of the court, withholding of evidence, defaulting on court-imposed obligations, disobeying court orders, or other actions justifying a judgment of default.  [Citation.]"  (*Adoption of Jacob C.*, *supra*, 25 Cal.App.4th at p. 624.)  Here, the record contains substantial evidence to support the juvenile court's findings that Christi hid Alexis from the court in another state, repeatedly lied to the social worker about Alexis's whereabouts and well-being, provided methamphetamine and other drugs to Alexis and denied Alexis access to appropriate psychiatric care and support services.  (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545 [appellate court reviews the evidence most favorably to the prevailing party and indulges in all legitimate and reasonable inferences to uphold the court's ruling].)  The juvenile court reasonably determined that Christi withheld crucial evidence from the court and thwarted the purpose of the juvenile court proceedings, which is to protect the child from further harm.  (§ 300.2.)  On this record, we cannot conclude the juvenile court erred when it barred Christi from presenting a defense at the 12-month review hearing under the disentitlement doctrine.

Further, error, if any, is harmless.  Christi presented a defense and cross-examined the social worker during the hearing on the application of the disentitlement doctrine in which she denied the social worker's allegations and presented her side of the story.  The juvenile court did not credit her testimony.  In view of Alexis's severe mental health problems and substance abuse addiction, which were exacerbated by Christi's conduct, Christi's severe and protracted methamphetamine use and lack of progress in her court-

9

ordered treatment plan, it is not reasonably probable that Christi would have obtained a more favorable result had she formally presented a defense at the 12-month review hearing.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

## DISPOSITION

The petition is denied.


NARES, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.