Filed 6/28/16  In re M.V. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.V., a Person Coming Under the Juvenile Court Law. | |
| JUAN C., Plaintiff and Respondent, v. ANDREW V., Objector and Appellant. | F072590 (Super. Ct. No. VAD7984) **OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Bret D. Hillman, Judge.

Catherine C. Czar, under appointment by the Court of Appeal, for Objector and Appellant.

Juan C., in pro. per., for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Kane, Acting P.J., Poochigian, J. and Smith, J.

# INTRODUCTION

Juan C. filed a petition pursuant to Family Code[1] section 7822 to declare M.V. free from the custody and control of his presumed father, Andrew V. Andrew opposed the petition and a contested hearing was held. The trial court determined that Andrew had abandoned M.V. and terminated Andrew's parental rights. Andrew appeals. We reverse.

# FACTUAL AND PROCEDURAL SUMMARY

On June 11, 2015, Juan filed a petition to declare then eight-year-old M.V., born in 2006, free from the custody and control of father pursuant to section 7822. The petition alleged that Juan was married to M.V.'s mother, Alexandrea, and that Andrew had left the child in mother's care for a period of over one year without provision for support and without communicating, with an intent to abandon. The petition sought a termination of father's parental rights. Juan sought to adopt M.V.

Mother's declaration was attached to the petition. In her declaration, mother stated that father was incarcerated in state prison and there was no court order for payment of child support. Mother stated she lived together with father and M.V. until M.V. was two or three years old. Father last saw M.V. in 2011. Mother acknowledged that because father was incarcerated, she was "no longer passing his letters to the child."

Father responded to the petition, strongly objecting to the contention that he had abandoned M.V., to termination of his parental rights, and to the adoption request. Father asked to be transported to all hearings; that counsel be appointed to represent him; and that separate counsel be appointed to represent M.V.'s interests. Father stated that M.V. had been in father's custody from birth until 2011 when father was incarcerated.

On July 10, 2015, the trial court appointed counsel to represent father. The trial court did not address the request to appoint separate counsel for M.V.

---

[1] References to code sections are to the Family Code unless otherwise specified.

On July 31, 2015, Family Court Services filed its report on the petition and request for adoption. Mother and Juan were married in April 2015, and had a two-year-old child together. Mother reported that she and father began cohabiting in 2006 and continued to live together until M.V. was three years old. Mother and father had shared custody of M.V. until 2011, when father was incarcerated. Mother stated father would be incarcerated for about another 10 years, until M.V. was no longer a minor.

Juan reported that his marriage to mother was his third marriage. He and mother began cohabiting when M.V. was five; M.V. was now eight years old. Juan wanted M.V. to have the same last name as other family members and felt he could provide permanency and stability for M.V. Juan had a criminal record, including felony burglary, felony drug possession, misdemeanor domestic violence, and misdemeanor hit and run. There were no convictions during the past 13 years.

M.V. reported that he "feels kind of left out" having a different last name. He wanted to be adopted by his stepfather so he would have the same last name. M.V. felt the adoption would allow him to have "2 dad's [*sic*]."

Father was not interviewed. The report did include his criminal history, including that father had pled no contest to assault with a firearm, with enhancements, on April 30, 2013, and had been sentenced to 11 years in prison.

The report concluded that termination of father's rights was in M.V.'s best interests and that M.V. and Juan appeared to have a "stable and close relationship."

A transport order was issued, ordering that father be transported from prison for a contested hearing on the petition scheduled for October 2, 2015.

At the October 2, 2015, hearing, father testified that he and mother lived together for about a year before M.V. was born and for three years after his birth. When they separated, father was given custody of M.V., with mother having weekly visitation. Father had primary custody of M.V. until he was incarcerated in 2012.

Once incarcerated, father sent letters at least once a month to M.V. Father received a return letter from mother, stating she would not forward his letters to M.V. He stopped writing when mother and M.V. moved without providing a forwarding address. Father contacted some of mother's family and his own family to try and ascertain M.V.'s whereabouts, to no avail.

Father acknowledged that no support orders ever issued and that during the years he had custody of M.V., he never asked for, or received, support for M.V. from mother. Mother never made any demand on him for support. Father stated his family was willing to assist in supporting M.V. while father was incarcerated. Father testified he was willing to provide support if asked, but "just didn't have any way of actually getting it to her."

Father testified that he never intended to abandon his son. Father opined that it would not be in M.V.'s best interests for father's parental rights to be terminated. "He is my son. We talk, you know. He would gain a lot, I think, by having a conversation with me." Father also testified, "I feel [it] would be detrimental to him if my parental rights were terminated. That might leave him longing to talk to me. Not being able to or being barred, that could cause some type of emotional or mental distress." Father did not want M.V. to be adopted by Juan.

Father acknowledged that he currently was scheduled for release from prison on January 11, 2025, after M.V. would have turned 18 years old. Father stated that he could offer conversation, experience, and "a father bond" to M.V., even while he was incarcerated and could communicate through letters.

Juan opined that a nine-year-old boy "needs a father figure." Juan stated he provided a home for M.V., food, and clothing.

The trial court stated that mother has had exclusive custody since father was incarcerated; father would be incarcerated during M.V.'s minority; and M.V. had a close relationship with Juan. The trial court concluded that father had abandoned M.V. and terminated father's parental rights.

4.

Father filed a notice of appeal on October 23, 2015.

## DISCUSSION

Father contends the evidence is insufficient to support a finding he intended to abandon his son. We conclude there are procedural errors, requiring reversal and remand.

**I.     Failure to Appoint Counsel for M.V.**

In his initial response to the petition, father requested the trial court appoint counsel for M.V. The trial court failed to address or act on this request.

Section 7861 requires the trial court to "consider whether the interests of the child require the appointment of counsel." While the trial court has discretion in deciding whether to appoint counsel for a minor, the trial court "'must exercise its discretion.'" (*Adoption of Jacob C.* (1994) 25 Cal.App.4th 617, 625.) If the record does not demonstrate that the trial court has exercised its discretion, error has occurred. (*In re Richard E.* (1978) 21 Cal.3d 349, 354.)

Here, despite an affirmative request from father that the trial court appoint separate counsel for M.V., the record discloses that the trial court did not consider the request and never exercised its discretion. Therefore, error has occurred. (*In re Richard E., supra,* 21 Cal.3d at p. 354.)

We assess whether the error is harmless and conclude, under the circumstances, it is not.

**II.     Prejudicial Effect**

Under section 7822, subdivision (a)(2), a proceeding to have a child under the age of 18 years declared free from a parent's custody and control may be brought where "[t]he child has been left by both parents or the sole parent in the care and custody of another person for a period of six months without any provision for the child's support, or without communication from the parent or parents, with the intent on the part of the parent or parents to abandon the child."

A court may terminate parental rights of a natural parent when it finds one parent "has left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child." (§ 7822, subd. (a)(3).) The court considers the frequency of the parent-child communications, the genuineness of the effort and the quality of the communications that occurred. (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1316.)

The court may presume an intent to abandon the child where the evidence shows the absent parent has failed to provide support to the child or failed to communicate with the child for the one-year period. Token efforts to support or communicate do not suffice. (§ 7822, subd. (b).) It is possible for an incarcerated parent to maintain communication with a child by mailing letters or cards on a regular basis, which overcomes a presumption of an intent to abandon. (*In re T. M. R.* (1974) 41 Cal.App.3d 694, 698–699.)

The trial court's finding of abandonment must be supported by clear and convincing evidence. (§ 7821.) The party seeking a declaration of abandonment must prove the offending parent intended to abandon the child for the statutory period. (See *In re Daniel M.* (1993) 16 Cal.App.4th 878, 886; see also *In re Marriage of Dunmore* (2000) 83 Cal.App.4th 1, 5; *People v. Ryan*, *supra*, 76 Cal.App.4th at p. 1316.)

Intent to abandon is a question of fact. (*In re B. J. B.* (1986) 185 Cal.App.3d 1201, 1212.) "'"Intent to abandon, as in other areas, may be found on the basis of an objective measurement of conduct, as opposed to stated desire." [Citation.]'" (*People v. Ryan*, *supra*, 76 Cal.App.4th at p. 1316.) The "failure to provide … support, or failure to communicate is presumptive evidence of the intent to abandon. If the parent or parents have made only token efforts to support … the child, the court may declare the child abandoned by the parent or parents." (§ 7822, subd. (b).)

To overcome the statutory presumption, the parent must make more than token efforts to support or communicate with the child. (*In re B. J. B.*, *supra*, 185 Cal.App.3d at p. 1212; § 7822, subd. (b).) The court may take into consideration "not only the number and frequency of his or her efforts to communicate with the child, but the genuineness of the effort under all the circumstances [citation], as well as the quality of the communication that occurs [citation]." (*In re B. J. B.*, *supra*, at p. 1212.)

Here, father had lived with M.V. from birth until father's incarceration, a period of nearly six years, and had primary physical custody of M.V. for three of those years. Father supported M.V. during those years. Once he was incarcerated, father continued to communicate on a regular basis, at least monthly, with M.V., but mother unilaterally decided to end all communication between father and son by refusing to give father's letters to M.V. M.V. was in the fourth grade and capable of reading letters from father, had mother not prevented the communication.

Mother further frustrated father's attempts to communicate with his son by moving and not providing father with a current address for M.V. Despite father's attempts to locate mother and M.V., he was unable to do so. If there was interference with father's attempts to communicate with M.V., and mother here acknowledges that there was, then grounds for finding father abandoned M.V. may not be present. (*In re E.M.* (2014) 228 Cal.App.4th 828, 840–841.)

As for support, section 7822, subdivision (a)(3), states that a parent must leave the child in the other parent's care and custody for a period of one year, "without any provision for the child's support" and with the intent to abandon the child. Here, there was no court order requiring father to pay support; no demand had been made by mother on father for support; and father testified his family members would assist "in any way possible with support" while he was incarcerated. Father also pointed out that since mother moved and did not provide him with her address, he had no way of knowing how to get any support payments to her. Evidence of failure to provide support, even when

7.

there has been no demand, coupled with a failure to communicate with the child, may be used as evidence of intent to abandon. (*In re Randi D.* (1989) 209 Cal.App.3d 624, 630.) However, father did not fail to communicate with M.V.; mother prevented father's attempts to communicate.

M.V. stated that he knew he had a father and a stepfather, but his memory of his father was fading. One reasonably may infer his memory is fading not just because of passage of time, but because of the lack of communication from his father, which is the result of interference by mother with that communication.

M.V. wanted to have the same last name as his mother and half-brother. He thought the petition filed by Juan would allow him to have two dads. M.V. does not appear to understand that he won't have two dads if the petition is granted; instead, he will no longer have any ability to communicate with or contact his birth father.

Under these circumstances, where father had been an integral part of M.V.'s life for many years; mother acknowledged in the moving papers that she was preventing any communication between father and M.V.; mother never asked for support and father's uncontroverted testimony was that he made provisions for support through family members while incarcerated; and father asked for counsel to be appointed to represent M.V., the trial court had an obligation at a minimum to exercise its discretion on appointment of counsel for M.V.

Counsel, at a minimum, could have explained the consequences of granting the petition to M.V., including the fact that M.V. would not have two dads; explained to M.V. that granting the petition meant no further contact or communication with father; could have assessed M.V.'s interest in maintaining any continuing contact with father; could have offered a reasoned opinion as to whether granting the petition was in the best interests of M.V.; or whether some other option, such as legal guardianship, would best serve M.V.'s interests.

8.

*Conclusion*

Although we are reversing the trial court's order terminating father's parental rights for failure of the trial court to exercise its discretion under section 7861, we are mindful that reversal does not affect the day-to-day living arrangements of M.V.  On remand, the trial court shall immediately reappoint counsel for father; issue transport orders pursuant to Penal Code section 2625 for any and all hearings in this matter; and take appropriate steps to exercise its discretion under Family Code section 7861 to appoint counsel for M.V.

## DISPOSITION

The October 2, 2015, order terminating parental rights is reversed and the matter is remanded for further proceedings.  The trial court shall immediately reappoint counsel for father and shall issue Penal Code section 2625 transport orders for all hearings in the matter and shall ensure that father is present for all hearings with counsel, or has signed a knowing waiver of the right to be present.